Claire **SCHLUSSELBERG**, Plaintiff,

v.

Charles M. **WERLY** et al., Defendants.

No. 67 Civ. 94.

United States District Court
S. D. New York.

Oct. 30, 1967.

Ira J. Sands, New York City, for plaintiff, Leonard I. Schreiber, New York City, of counsel.

Debevoise, Plimpton, Lyons & Gates, New York City, for defendants Putnam Management Co., Inc., Putnam Fund Distributors, Inc., Mutual Fund Associates Incorporated, Charles M. Werly and Charles Devens.

Barrett, Knapp, Smith & Schapiro, New York City, for defendant Putnam Investors Fund, Inc.

Townley, Updike, Carter & Rodgers, New York City, for defendant Howard W. Johnson.

WYATT, District Judge.

This is a motion by certain of the defendants for an order dismissing the action for improper venue (28 U.S.C. § 1406(a), Fed.R.Civ.P. 12(b) (3)). There is a motion in the alternative by these same defendants for an order transferring the action to the District of Massachusetts "[f]or the convenience of parties and witnesses, in the interest of justice" (28 U.S.C. § 1404(a)). Two other defendants move to transfer the action to the District of Massachusetts for the same reason.

The action was commenced on January 10, 1967. There is one claim in the complaint, made by plaintiff as a stockholder of Putnam Investors Fund, Inc. (Fund) on behalf of that corporation.

The motion to dismiss for improper venue is made by defendants Putnam Management Company, Inc. (Adviser), Mutual Fund Associates Incorporated (Underwriter), Werly, Devens, and Johnson. Each such movant contends that he (or it) is not an "inhabitant" of this District, that this District is not one in which he (or it) "transacts business" and that no "act or transaction constituting the violation" occurred in this District, these being the venue requirements of the SEC Acts (15 U.S.C. §§ 78aa, 80a-43, and 80b-14. In the alternative, these defendants move to transfer the action to the District of Massachusetts for the "convenience of parties and witnesses, in the interest of justice" (28 U.S.C. § 1404(a)).

Fund, for whose benefit the action is brought, and Putnam Fund Distributors, Inc. (Distributor) move to transfer the action to the District of Massachusetts for the "convenience of parties and witnesses, in the interest of justice" (28 U.S.C. § 1404(a)).

Fund is represented by counsel independent of those counsel representing other defendants; so also defendant Johnson is represented by counsel independent of those counsel representing other defendants.

It is not necessary to determine whether venue is proper in this District or not. If the venue is not proper, a transfer rather than dismissal would be "in the interest of justice" (28 U.S.C. § 1406(a)). See 1 Moore's Federal Practice (2d ed.) 1907–09.

But assuming the venue to be proper, the action ought to be transferred to the District of Massachusetts and the motion to transfer is granted.

### The Complaint

The complaint is lengthy but its averments may be put in summary fashion.

Fund is a Massachusetts corporation registered under the Investment Company Act of 1940 (15 U.S.C. § 80a-1 and following). It is an "open-end" "diversified" "management" "investment company" (15 U.S.C. §§ 80a-3, 80a-4, 80a-5).

Adviser is a Massachusetts corporation and is controlled by certain of the individual defendants who are also officers or directors, or both, of Fund. There is a Management Contract under which, for a fee, Adviser supplies investment research, advisory and other services to Fund. Adviser also acts in a similar fashion for three other funds, "the management of which is substantially identical".

Distributor is a New York corporation, wholly owned by Adviser; the officers and directors of Distributor hold similar positions with Adviser. Distributor under a contract sells, for a commission, the shares of Fund and "controls and directs the placement of brokerage business" for Fund.

Underwriter is a California corporation, wholly owned by Distributor; the officers and directors of Underwriter hold similar positions with Fund, Adviser and Distributor. Underwriter sells shares of Fund for commissions.

Adviser, Distributor and Underwriter and their officers and directors dominate and control Fund and the officers and directors of Fund.

Adviser has exercised control over Fund. By reason of its portfolio buying and selling, Fund generates huge "business and brokerage commissions for brokers" on various stock markets. Adviser has "exploited" the investment policies of the Fund for the benefit of Adviser, Distributor and Underwriter and their officers, directors and stockholders. Adviser could have made savings for Fund on its brokerage commissions but instead has caused Fund to pay the highest possible amount of commissions so that Adviser can "requisition" a part of the commissions and divert this part to brokers and dealers who sell Fund shares for Distributor or who supply "services and materials" to Adviser, Distributor

and Underwriter. The dealers who sell Fund shares and to which commissions are diverted by Adviser, also sell shares "of other Funds for which the Adviser acts as investment adviser or the General Distributor acts as distributor, in which other Funds the Fund has no interest or investment and from which sales the Fund derives no financial advantage; and out of the balance of 40%, a portion was allocated to other dealers who furnished statistical, quotation and other information to the Adviser." The commissions diverted to such dealers are called "give-ups" or "reciprocals".

Fund could have executed its portfolio transactions more cheaply by using more efficient brokers, by paying lower commissions through elimination of "give-ups" and "reciprocals", and by using the so-called "third market". The practice followed in executing portfolio transactions of Fund was according to a plan to benefit Adviser, Distributor and Underwriter at the expense of Fund.

The principal relief sought is (a) an accounting to Fund by defendants for all damages to Fund and for all profits to defendants, and (b) a rescission of all contracts between Fund and the Adviser, Distributor and Underwriter.

### Jurisdiction

Jurisdiction is asserted under the Investment Company Act of 1940 (15 U.S.C. § 80a–1 and following), the Investment Advisers Act of 1940 (15 U.S.C. § 80b–1 and following), the Securities Exchange Act of 1934 (15 U.S.C. § 78a and following) and the principle of pendent jurisdiction. The provisions of these SEC Acts which are claimed to have been violated are not specified but for present purposes at least it may be assumed that there is jurisdiction under those Acts. 15 U.S.C. §§ 78aa, 80a–43, and 80b–14; See Brown v. Bullock, 294 F.2d 415 (2d Cir. 1961).

### Boston is the Single Focus of Challenged Activities of Defendants

Fund has its only offices at 265 Franklin Street in Boston. It has no telephone

or telephone listing in New York, has no records here and no employees here. When investment securities are bought or sold by Fund, the orders are placed from Boston.

Fund has eleven directors, all defendants here; of these eleven directors, six appear to be "outside" directors, that is, not officers or employees of Fund and not connected with Adviser or Distributor or Underwriter. These six are Forbes (a private trustee with offices in South Dartmouth, Massachusetts), Gardiner (president of a trust company in Boston), Hunter (owner of a trustee and advisory service in Boston), Johnson (president of Massachusetts Institute a Technology at Cambridge), Hurley (member of a Boston law firm), and Reece (president of a company in Waltham, Massachusetts, making industrial sewing machines).

The other five directors of Fund are Werly, Devens, Putnam, Cutler and Lyman; these five are also officers of Fund and officers and directors of Adviser; all of them have their offices at 265 Franklin Street in Boston.

The Executive Committee of Fund consists of defendants Werly, Devens, Gardiner, Hunter and Hurley. The portfolio manager of Fund is one of its vice-presidents, defendant Nichols. The traders for the Fund, who do the actual buying and selling of portfolio shares, are two employees, Mullin and Farrell (not defendants), in the Boston office and who reside in the Boston area. It is these two traders who determine how portfolio transactions are to be handled; they choose the market to be employed and what brokers are to be used.

Adviser has its only offices at 265 Franklin Street in Boston. It has no telephone or telephone listing in New York, has no records here and no employees here. All its services to Fund are performed in Boston.

Adviser has six directors who are defendants here: Werly, Devens, Putnam, Cutler, Lyman and Nichols. There are at least two other directors of Adviser, Goss and Riley, who are not defendants ° here. They are all also officers of Adviser, and also officers or directors or both of Fund.

Defendants Ullman and Bresnahan are officers of Fund and of Adviser but not of Distributor or Underwriter and are not directors of any of the corporate defendants. They have their offices at 265 Franklin Street in Boston.

There is a vice-president and director of Adviser, Riley, who is in charge of allocating all "give-ups" on account of statistical, quotation and other services furnished. He is not a defendant. He is also a vice-president of Fund and head of the "Research Committee". He works in the Boston office and lives in the Boston area.

Distributor is a Massachusetts corporation (the averment in the complaint that it is a New York corporation appears to be an error). Distributor has its principal office in Boston. Distributor does have an office with four employees at 25 Broadway in New York. Three of these employees are Regional vice-presidents of Distributor who act in New York in connection with the sales, through dealers, of shares of Fund and of other investment companies for which Distributor acts as principal underwriter. The fourth employee in the New York office is a secretary. Distributor's New York office does not take any part in investment decisions, allocation of brokerage commission, and like activities (nor presumably would any other office of Distributor). So far as appears, the only activity of Distributor is the sale of shares.

Distributor does not itself sell the shares of Fund through its four employees in New York but makes contracts with "independent securities dealers" who themselves sell the shares. The contracts with these dealers are executed by Distributor in Boston. When shares of Fund are sold in New York, applications for the purchase are sent to Boston for acceptance or rejection there, whether by Fund or by Distributor does not appear.

Distributor has three directors who are defendants here: Werly, Putnam and Cutler. They are all also officers or directors or both of Fund and of Adviser.

There is at least one other director of Distributor, Goss, who is not a defendant here. The president of Distributor, Goss, is in charge of allocating all "give-ups" on account of sales of Fund shares. Goss works in the Boston office and lives in the Boston area.

Underwriter has its principal office in San Francisco. It has no office in New York, nor telephone, nor telephone listing, nor records, nor employees. Underwriter has two directors, both defendants here: Putnam and Lyman. They are also officers or directors or both of Fund, Adviser, and Distributor.

All meetings of stockholders and directors of Fund, Adviser, and Distributor have been held in Boston; where such meetings of Underwriter have been held does not appear but they are not held in New York.

Fund, Adviser, Distributor and Underwriter together have 289 employees. Of these 289 employees, 4 are located in New York, these being 4 employees of Distributor, three Regional vice-presidents and a secretary. Presumably all other employees, or substantially all, work in Boston.

The fourteen individual defendants all have their business offices in Boston or nearby and all but one have their residences in the Boston area. The one exception lives in Maine.

Adviser supplies investment research and advisory services to four other large investment companies: The Putnam Growth Fund, the George Putnam Fund of Boston, The Putnam Income Fund, Inc., and Putnam Equities, Inc. The individual defendants who are not outside directors of Fund are "key personnel" of these four other investment companies, which apparently share the same offices with Fund.

Two Actions Similar to that at Bar Are Now Pending in Massachusetts; The Three Actions Have Common Questions of Law and Fact

On January 10, 1967, one Bass, as a stockholder of The Putnam Growth Fund, commenced a stockholder's derivative action in this Court. The attorney for the plaintiff Bass is the same attorney who represents plaintiff in the case at bar. The complaint in the Bass action is in substantial part the same, word for word, as the complaint in the case at bar. The basis for the Bass action and the relief sought are exactly the same as in the case at bar. The Bass action relates to The Putnam Growth Fund whereas the case at bar relates to Putnam Investors Fund, Inc. The questions of law and fact are the same in the two actions and the defendants are substantially the same. All of the defendants in the case at bar are defendants in the Bass action except that the corporate defendant for whose benefit the case at bar is brought is, of course, not a defendant in the Bass action and except that the individual defendant Forbes is not a defendant in the Bass action.

There are averments in the complaint in the Bass action (paragraphs 20, 21 and 24) respecting The Putnam Programs Corporation which averments do not appear in the complaint at bar. This is of no significance, however, because the Putnam Programs Corporation is averred to be a wholly owned subsidiary of Adviser; commissions received by such subsidiary are the same as those received by Adviser or by Distributor, another subsidiary of Adviser.

It is evident that the same management group in Adviser act with respect to several mutual funds, including The Putnam Growth Fund for which the Bass action was brought and Putnam Investors Fund, Inc. for which the case at bar was brought. This is averred in paragraph 12 of the Bass complaint and in paragraph 14 of the complaint at bar in identical language as follows:

"The Adviser acts in a like capacity for three other funds, the management of which is substantially identical."

In the face of almost identical complaints in the two actions, the efforts for plaintiff to establish significant differences between them are doomed to fail. For example, it is said that plaintiff in the Bass action attacks "use of the con-

tractual-front-load program and its pressure selling tactics", "over activity of Putnam Growth and therefore the 'churning' effect of this over activity", and "the use of this circle route of using out-of-town exchanges". There is not one word in the Bass complaint about any of these matters. But assuming that there are the differences which plaintiff claims, these are in degree and not in kind, and should not affect the result here.

It is entirely clear that the questions of law and fact in the Bass action are the same as those in the case at bar.

Sometime shortly before January 13, 1967, one Marcus, another stockholder of The Putnam Growth Fund, commenced a stockholder's derivative action for the benefit of that fund in the United States District Court for the District of Massachusetts. The defendants in the Marcus action include many defendants in the Bass action and in the case at bar, namely Adviser, Distributor and Underwriter as well as the individual defendants Werly, Devens, Putnam, Lyman, Gardiner, Hunter, Johnson and Hurley.

The Marcus action is said to be brought under the Investment Company Act of 1940. The Marcus complaint makes some averments not found in the complaints in the Bass action and in the case at bar, but the principal issue raised by the Marcus complaint is the same as that raised by the complaints in the Bass action and in the case at bar, namely, the allocation by The Putnam Growth Fund or Putnam Investors Fund, Inc. of "give-ups" or "reciprocal brokerage" to dealers who sell shares of the Fund or supply services to the Fund adviser. For example, the Marcus complaint avers: "Defendant's power to allocate the Fund's brokerage business is a power in trust which must be used for the benefit of the Fund and not for the benefit of Management [Adviser] and Distributors [Distributor]". The complaints in the Bass action and in the case at bar aver: "The power to allocate the Fund's portfolio purchase and sale commissions among

brokers and dealers, is a power in trust and a corporate opportunity for the Fund".

Under date of April 10, 1967, a written stipulation was made by counsel in the Bass action that said action be transferred to the District of Massachusetts under 28 U.S.C. § 1404(a) ("for the convenience of parties and witnesses, in the interest of justice"). The Putnam Growth Fund, for whose benefit the Bass action was brought, stipulated to the transfer. Defendants Adviser, Distributor, Underwriter, The Putnam Programs Corporation, Werly and Devens stipulated to the transfer. The foregoing defendants were apparently the only defendants who had been served. Plaintiff Bass, by counsel now opposing transfer of the case at bar, stipulated to the transfer of the Bass action. It makes no difference for what reasons of strategy and tactics the transfer was agreed to by counsel for Bass. The significant fact is that two actions are pending in the District of Massachusetts which raise the same questions of fact and law as the case at bar.

### The Case at Bar Ought to be Transferred to the District of Massachusetts

■■ All of the questioned transactions in this case originated and were decided upon in Boston, all of the records of such transactions are in Boston, and all of the defendants and their witnesses who are not defendants have their offices in Boston. These factors without more would indicate a transfer to Boston, especially in a stockholder's derivative action where the respect normally accorded to a plaintiff's choice of forum is "considerably weakened" because of elements peculiar to that type of action and fully discussed in Koster v. (American) Lumbermens Mutual Cas. Co., 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1947).

Plaintiff argues at length from the activities of the New York office of Distributor but these are not only minor in relation to the total picture but do not

involve the practices here attacked. This is shown by the fact that no officer or employee of Distributor from the New York office is named as a defendant.

While plaintiff will not be a witness it may well be that, as is argued for her, some witnesses for her side have their offices in New York. Some of these are expert witnesses (Sands affirmation, pp. 30, 31) and while their travel expense to Boston would be an additional item, in relation to their fees it would not be enough to be taken seriously. In any event, depositions could be taken in New York and where commercial transactions are involved, as here, the usual disadvantages of deposition testimony virtually disappear; as said for plaintiff, it is not "a question of veracity" here (Sands supplemental affirmation, p. 15).

All arguments made for plaintiff have been considered even though not all can be discussed here.

■ But if transfer to Boston were not otherwise indicated, it would be compelled by the pendency in Boston of the two similar actions.

It would be inexcusably poor judicial administration to permit a situation where a judge or judges in the District of Massachusetts and a judge or judges of this Court would be devoting time and effort to the same questions of law and fact. There is a "task of administration" here present, as emphasized in *Koster* (330 U.S. at 526, 67 S.Ct. at 832). The three similar actions would appear appropriate for consolidation for trial (Fed.R.Civ.P. 42(a)). At the least, they should not remain pending in different districts.

The motion is granted to the extent that the action is directed to be transferred to the United States District Court for the District of Massachusetts and the Clerk is directed to do all acts and things necessary or appropriate in connection with such transfer.

So ordered.