Abraham SILVERMAN and Rose Silverman, Plaintiffs,

v.

WELLINGTON MANAGEMENT COMPANY et al., Defendants.

Rose LERMAN, Custodian, etc., Plaintiffs,

v.

Walter L. MORGAN et al., Defendants.

Phyllis LIFTER and Teddy W. Weinstein, Plaintiffs,

v.

Walter L. MORGAN et al., Defendants.

Herman H. BUZIN, Plaintiff,

v.

Rawson LLOYD et al., Defendants.

Nos. 67 Civ. 1583, 68 Civ. 965, 68 Civ. 1086, 68 Civ. 3899.

United States District Court
S. D. New York.

Feb. 19, 1969.

Louis Kipnis, New York City, for plaintiffs Abraham Silverman and Rose Silverman.

Milton Paulson, New York City, for plaintiff Rose Lerman.

Weinstein & Levinson, New York City, for plaintiffs Lifter and Weinstein.

Abraham I. Markowitz, New York City, for plaintiff Herman H. Buzin.

Sullivan & Cromwell, New York City, for defendants Morgan, Welch, Bogle, Cabot and Wellington Management Co. Marvin Schwartz, Cornelius B. Prior, Jr., New York City, and Stradley, Ronon, Stevens & Young, Philadelphia, Pa., of counsel.

MANSFIELD, District Judge.

In these shareholders' derivative actions which set forth claims under the Investment Company and Investment Advisors Acts of 1940, the Securities Exchange Act of 1934 and at common law, certain of the defendants have moved for dismissal pursuant to Rule 12(b) (3) on the ground that venue is improper or, in the alternative, for transfer of the cases to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1404(a) and 1406 (a). Certain of the defendants located in New York (Cole, Breaks, First Investors Corporation) are not parties to the motions to dismiss; all parties that have been served, however, join in the motions to transfer with the exception of First Investors Corporation ("First") which has filed an affidavit by its president indicating that it has no objection to transfer. Plaintiffs in the *Lifter* action have made a cross-motion for discovery on issues of fact purportedly raised by defendants' motion.

Plaintiffs in these actions are shareholders of defendant Wellington Fund ("Fund"), a diversified open-end investment company registered under the Investment Company Act of 1940. Defendant Wellington Management Company ("Adviser") is employed by the Fund to manage the Fund, supervise and assist in the management of the Fund's transactions in its portfolio securities, and furnish investment advice as well as statistical and research services. Defendant First Investors Corporation distributes shares of the Fund through the sale of periodic payment plans. The 16 individual defendants are all officers or directors of Fund. In addition defendants Morgan, Welch, Kulp, Lloyd, Glancey, and Boyle are officers and directors of Adviser. Morgan is chairman of the board of directors of both Fund and Adviser; Welch is president of both enterprises. It is alleged that all stock of the Adviser is owned and/or controlled by Welch and Morgan.

The complaints, although differing in some details, charge substantially the same misconduct. It is alleged that Adviser has directed certain brokers who executed orders in connection with transactions involving the Fund's portfolio securities to give up a part of their commission to other brokers in return for services rendered to Adviser by the recipients of the "give-ups," and that various brokers who have rendered such services have been interposed as recipients of brokers' commissions. These practices, it is claimed, enable Adviser to receive certain services which it is obligated to perform for the Fund through the payment of commissions which are absorbed by the Fund rather than at Adviser's own expense. It is further claimed that Adviser places orders with brokers in reciprocation for their selling Fund shares for which Adviser receives a commission from Fund, that Adviser has failed to engage in transactions in Fund portfolio securities in the "third market" where commissions are substantially lower, and that the Fund's portfolio turnover is excessive thus generating excessive brokerage commission. It is claimed that these practices result in the Fund's payment of excessive commissions solely to encourage the recipient brokers to sell more Fund shares; and these sales, in turn, are beneficial to Adviser, which retains a portion of the "load" on such sales, but that they do not benefit the Fund. It is further claimed the fees paid by the Fund to Adviser are excessive.

◼ In order to lay venue in this district as to a defendant, plaintiffs must show that one or more of the acts constituting his alleged violation of the relevant federal securities laws occurred here or that the defendant is an inhabitant of this district or transacts business here. 15 U.S.C. §§ 78aa, 80a–43, 80b–14. Although they concede that all but 2 or 3 of the defendants are neither inhabitants of this district nor engaged in transaction of business here, plaintiffs contend that venue will be established by proof that a major part of the Fund's purchases and sales of its portfolio securities took place on exchanges in this district

and that some of the alleged illegal "give-ups" and "reciprocals" were consummated through brokers located here. Movants, on the other hand, reply that the acts complained of are not the sales of securities or Fund shares in New York, but the Fund's solicitation of markets and brokers for portfolio transactions, all of which occurred either in the Eastern District of Pennsylvania or in Claymont, Delaware. On this record the Court has grave doubts as to whether the defendants committed acts constituting the alleged violations within the district. We therefore cannot rule with certainty on the motions to dismiss, since further proof would be required to establish the nature and extent of the activities of each defendant in this district and whether such were committed here in furtherance of a violation of the relevant federal securities laws. It becomes unnecessary to resolve these issues, however, for the reason that other circumstances not in dispute persuade us to exercise our discretion in favor of transfer of the actions to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a). We believe that such a transfer operates for the convenience of parties and witnesses and in the interest of justice, particularly in view of our serious doubt as to the existence of venue here which could be resolved only after protracted hearings that might turn out to be wasteful, the existence of venue in the Eastern District of Pennsylvania not being in dispute.

■ Although plaintiffs' choice of forum is entitled to considerable weight, Lykes Bros. S. S. Co. v. Sugarman, 272 F.2d 679 (2d Cir.1959); Peyser v. General Motors Corp., 158 F.Supp. 526 (S.D.N.Y.1958), in a shareholders' derivative suit by a plaintiff with only a nominal financial interest in the claim on behalf of a widely scattered group of shareholders, each of whom could presumably have instituted such a suit, this factor is of less significance than in the ordinary lawsuit. Koster v. American Lumbermens Mutual Casualty Co., 330 U.S. 518, 524, 67 S.Ct. 828, 91 L.Ed. 1067 (1946).

The situation here and the factors relevant to the issue of transfer are strikingly similar to Schlusselberg v. Werly, 274 F.Supp. 758 (S.D.N.Y.1967), in which Judge Wyatt granted a motion to transfer. The actions in the present case could have been brought in the Eastern District of Pennsylvania. All but one of the individual defendants have their offices in or near that district. The alleged misconduct of defendants took place primarily in or near the Eastern District of Pennsylvania. Adviser's main office is at 1630 Locust Street, Philadelphia, the great majority of its employees and records being located at its home office there; although it maintains offices elsewhere, it is registered to do business only in Pennsylvania and Massachusetts and maintains no office in this district. The Fund's offices, records and most employees are in Claymont, Delaware, approximately 20 miles from Philadelphia. Although, as plaintiffs point out, many of the transactions in connection with the Fund's portfolio securities are necessarily consummated in this district, the orders emanate from the home offices near Philadelphia. All portfolio securities are kept in Philadelphia, where the First Pennsylvania Banking & Trust Company serves as the Fund's custodian and stock transfer agent; stockholders' and directors' meetings are held almost exclusively in Pennsylvania.

It is furthermore apparent that the decisions upon which these transactions are based, including decisions with respect to the choice of broker, are made by the officers and employees of the Fund and the Adviser located in and near Philadelphia. The only Fund director-defendants with substantial New York contacts are Cole and Breaks. The remaining directors with the exception of five who live in the Boston area all live and work in or near Philadelphia. Defendants Welch and Morgan, who are directors and officers of both Fund and Adviser as well as controlling stockholders of Adviser, have business addresses in Philadelphia at 1630 Locust Street and live in nearby suburban areas in Pennsylvania. All the

officers of Fund and Adviser are located in the same area or in nearby Delaware.

Plaintiffs contend that all of this is not sufficient to constitute a "clear-cut showing that when all the interests are considered, trial would more conveniently proceed and the interests of justice would be better served in the other district." Peyser v. General Motors Corp., 158 F.Supp. 526, 529 (S.D.N.Y.1958). In *Peyser*, however, the lawsuit involved the nationwide activities of two giant manufacturing firms, E. I. Dupont de Nemours & Co. and the General Motors Corporation. The court concluded that there was no one jurisdiction ascertainably more convenient than any other, and therefore upheld the plaintiff's choice of forum in that shareholders' derivative action. In this case, on the other hand, the challenged investment activities of Fund and Adviser are planned and carried out in the Philadelphia area.

Although plaintiffs may find it necessary to call expert or other witnesses from New York, as a practical matter the enterprises that will be involved in this litigation on a day-to-day basis are located in the Philadelphia area, where almost all of the parties and probably most of the witnesses are to be found. Even though the distance between New York and Philadelphia is relatively short, it is not significantly shorter than the distance in *Schlusselberg* (New York to Boston), and even this relatively short distance could produce substantial disruption to the business of the Fund and Adviser which will undoubtedly be compelled to bear the greatest burden of production of both records and witnesses. Although plaintiffs have offered to go to the Fund and Adviser offices to select and copy the relevant records so that they need not be produced here, we have no assurance, however, that this offer will obviate the disruption. It does not appear that this case will be decided solely or even primarily on the basis of documentary evidence; the convenience of the live witnesses and the firms producing them must, therefore, be given substantial weight. It is not, furthermore, apparent that plaintiffs' gratuitous offer will be acceptable to defendants who may for understandable reasons prefer to produce the records themselves rather than have plaintiffs conduct a search of their files.

Plaintiffs Silverman and Lerman seek to distinguish the *Schlusselberg* case, which involved an almost identical claim with respect to a Massachusetts investment company, on two grounds. First they point to the activities of First in selling the Fund's shares in this district and suggest that no such circumstances existed in *Schlusselberg*. In that case, however, the defendant Putnam Fund did have a distributing agent with offices in New York, although that agent did not itself make sales as First apparently does. 274 F.Supp. at 761–762. The crucial point here, however, is that no misconduct in the selling of Fund shares is alleged in this action; the alleged misconduct is in connection with Fund's portfolio securities transactions in which First is not a participant. The activities of First in this district on behalf of the Fund, substantial as they may be, do not have sufficient relevance to this litigation to negate the conclusion that the focus of concern here is upon activities in the Philadelphia area. Second, plaintiffs Silverman and Lerman state inaccurately that Judge Wyatt "relied heavily" on the fact that in *Schlusselberg* similar litigation was pending in Massachusetts. Although Judge Wyatt stated that the pendency of similar litigation in Boston would compel transfer, he also clearly indicated that even absent this factor defendants' motion to transfer would have been granted. 274 F.Supp. at 763–764.

Plaintiffs further urge that justice will not be served by transfer here because it takes substantially longer for a case of this type to get to trial in the Eastern District of Pennsylvania than in this district. This contention is based on a comparison of the length of time between the placing of a case on the calendar and trial in the two districts. In the Eastern District of Pennsylvania, however, cas-

es are placed on the calendar when the answer is filed; in this district they are not placed on the calendar until a note of issue is filed after discovery is completed and the case is actually ready for trial. The comparison is therefore misleading, since it fails to account for the substantial length of time that a case like this one is likely to remain in the discovery stages in this district before it is placed on the calendar. Comparison of the time interval from filing to disposition of civil cases tried during the fiscal year ending June 30, 1968 reveals the median time in the Southern District of New York to have been 43 months as compared with 42 months in the Eastern District of Pennsylvania. Annual Report of the Director of the Administrative Office of the United States Courts, 1968, Table C5, p. 216 (U. S. Govt. Printing Office 1969).

The Lifter plaintiffs' motion for discovery is based upon cases holding that before an action can be dismissed on grounds of lack of jurisdiction or improper venue, the plaintiffs must be granted leave to engage in discovery if there is a substantial dispute as to facts material to the question of jurisdiction or venue, e. g., Blair Holdings Corp. v. Rubenstein, 159 F.Supp. 14 (S.D.N.Y. 1954); Abrams v. Bendix Home Appliances, Inc., 92 F.Supp. 663 (S.D.N.Y. 1950). In this case, however, plaintiffs are not threatened with dismissal; in fact, transfer to the Eastern District of Pennsylvania should avoid an issue as to venue. Furthermore, plaintiffs have produced nothing but the contentions of counsel to controvert the affidavits submitted by defendants which demonstrate that the primary focus of this litigation is on conduct which took place in and near Philadelphia.

For the reasons discussed, defendants' motions to transfer this action to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1404(a) are granted, and the Lifter plaintiffs' motion for further discovery is denied.

It is so ordered.