**Harry LEVINE and Ruth Levine,**
**as Joint Tenants, Plaintiffs,**

v.

**FINANCIAL PROGRAMS, INCORPO-**
**RATED, Spencer Phillips, Dan Thorn-**
**ton, Thomas J. Herbert, W. A. Alexan-**
**der, Robert G. Bonham, Charles C.**
**Gates, Jr., Albert W. Hillmond, Joseph**
**B. Neville, Lowell Stanley, Fred A.**
**Deering, and as derivative defendants,**
**Financial Industrial Income Fund, In-**
**corporated, Financial Dynamics Fund**
**Incorporated, Financial Venture Fund**
**Incorporated, and Financial Industrial**
**Fund, Inc., Defendants.**

No. 69 Civ. 1889.

United States District Court,
S. D. New York.

Dec. 22, 1969.

Ira Jay Sands, New York City, for plaintiffs; Leonard I. Schreiber, Harold Webb, James A. Geller, New York City, of counsel.

Royall, Koegel & Wells, New York City, for defendants Phillips, Bonham, Gates; Modesitt & Shaw, Denver, Colo., Richard H. Shaw, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This is a motion for a transfer of this action to the District of Colorado pursuant to 28 U.S.C., section 1404(a). The action is a derivative shareholders' suit brought on behalf of Financial Industrial Fund, Inc. (Fund) and other affiliated mutual funds against directors and officers of the various funds and their management and investment advisor, Financial Programs, Inc. (Advisor). Essentially, the defendants are charged with breach of fiduciary duty under various provisions of the Investment Company Act of 1940, the Securities Act of 1933 and the Securities Exchange Act of 1934. Also charged are violations of service and advisory contracts between the funds and the Advisor. Generally, it is alleged that the defendants despoiled the funds through excessive management and advisory fees and by paying excessive and unwarranted brokerage commissions on portfolio transactions in the form of so-called "give-ups," "reciprocals" and "interpositioning,"[1] which yielded profits and benefits to the defendants from whom an accounting is sought for their alleged illicit gains.

Three individual defendants, the only ones thus far served with process,[2] seek removal of the action upon allegations that, with the exception of a wholly-owned subsidiary of the Advisor, none of the funds is a New York corporation, has a place of business in this district or transacts business here; that the principal place of business and principal activities of all the funds are centered in Denver, Colorado; that as to the subsidiary corporation which maintains an office here, its sole function is to promote and distribute Fund shares to local broker-dealers; it does not sell such shares here but contacts independent securities dealers, who sell the shares on the basis of applications for purchase that are sent to the Denver-based funds for acceptance or rejection; that its promotional activities in this district

---

1. For a general explanation of these items, *see* Schlusselberg v. Werly, 274 F.Supp. 758, 760 (S.D.N.Y.1967).

2. Financial Programs, Inc., which questions that it has been properly served with process, but acknowledges that it can be served without difficulty, joins in the motion.

are unrelated to activities of the funds which are the basis of this suit.

The movants further assert that of the principal directors and officers of one or more of the funds who are charged with recreant conduct, six work and reside in Denver; that of the remaining four defendants, three reside and work, in California, Arizona and Kansas, states much closer to Denver than New York; that only one resides in New York City. They further assert that practically all potential witnesses are employees of the corporate defendants, who work and reside in Denver, Colorado. Finally, it is contended that the contracts with the Advisor, challenged as unfair, and the conduct of the defendants, characterized as a betrayal of the shareholders' interests, were conceived, executed and performed in Denver; that the records of the challenged transactions, consisting of the management and advisory contracts themselves, records of the services performed thereunder and of the brokerage orders on which excessive commissions allegedly were paid, are all located there, whereas only partial and limited records of broker-dealers are here. Accordingly, it is urged that (1) unless transfer is granted, witnesses, both the individual defendants and key employees of the various funds, will be greatly inconvenienced and forced to be absent from their required tasks and families while waiting to testify in New York; (2) if the trial is held in this district, the normal, daily operation of the funds will be unduly disrupted, to the detriment of the funds, for whose benefit this action is brought; and (3) a trial can be had in the Denver district in approximately one to one and a half years after the complaint is docketed, whereas in this district it would not be reached for a much longer period. In sum, the defendants urge that the case can be tried more expeditiously, inexpensively and conveniently in the proposed transferee district

and hence, applying the criteria to be considered by the Court, the interests of justice will be served by the transfer.[3]

The plaintiffs, in opposing transfer, stress that many of the transactions which are at the core of their charges of breach of fiduciary duty and resultant illicit gains to the defendants took place and were consummated in this district; that the records of such transactions are here; that the broker-dealers and other witnesses who have knowledge of the acts and conduct through which it is charged the funds were despoiled are here and, allegedly being hostile, will not agree to testify in Denver; that the experts required to establish that the commission fees, salaries and allowance were excessive, and that the "give-ups" and "reciprocals" were improper, reside and maintain offices in this district. Plaintiffs further contend that the volume of sales of Fund shares bears a direct relationship to the alleged misconduct of the defendants, for as shares are sold, they result in the defendants receiving the excessive payments and improper benefits and the size of the Advisor's fee is keyed to net assets of the Fund; that more shares are sold in this district through the subsidiary corporation than in any other area of the United States.

The voluminous papers submitted by the parties, with their charges and countercharges, have served to obscure rather than to clarify matters. However, based upon a consideration of the pertinent factors which govern motions for transfer under section 1404(a), the Court is of the view that the balance of convenience preponderates in favor of transfer. It may be accepted, as plaintiffs allege, that a substantial portion of the shares of the funds are sold in and are owned by residents in this and adjacent districts. But this is hardly relevant on the issue of the more convenient place for trial.

3. *See* Schneider v. Sears, 265 F.Supp. 257, 263–267 (S.D.N.Y.1967); Oil & Gas Ventures—First 1958 Fund, Ltd. v. Kung, 250 F.Supp. 744, 754–758 (S.D. N.Y.1966).

Equally it may be accepted (although it is disputed) that the bulk of the stock market transactions on behalf of the funds were executed on exchanges in this district. However, such transactions were but the consummation and end result of the claimed overreaching conduct. The case hinges, as plaintiffs themselves state, upon whether the "give-ups," "reciprocals," "interpositioning" and the failure to use less expensive trade methods in various transactions are a violation of the Investment Company Act of 1940. The claimed misuse of corporate assets, which plaintiffs assert is the heart of their case, is the result of practices, acts and conduct of the defendants which occurred at Denver; the records upon which plaintiffs must rely, as well as the books involved, are all located there. If plaintiffs succeed in establishing their basic claim, then the extent of the transactions which furthered the violation of their fiduciary obligations is only a matter of accounting. Moreover, with respect to the stock exchange transactions, depositions will have to be taken no matter where the case is tried, and except for the operative facts as to the claimed wrongful conduct of the defendants, the trial will largely be one of depositions rather than of live witnesses. Plaintiffs, who are not residents of this state or district, are themselves unlikely witnesses. They stress, however, the need for expert witnesses who they allege reside or maintain their offices in this district. No doubt it would be more convenient for New York experts were the trial to take place here, but this is not the sole consideration. If experts are not available from the large Denver financial community, an unlikely situation, or if the New York experts will not travel to Denver, their depositions can be taken for use upon the trial.[4]

If the case were to remain here, it would excessively inconvenience the principal officers of the funds and their key employees, and would be disruptive of the normal functions of the corporation for whose benefit this action is brought.

Under all the circumstances presented, the balance of convenience and the interests of justice favor trial in the proposed transferee forum rather than in this district.[5] The motion is granted.

---

4. *See also* Roller Bearing Co. of America v. Bearings, Inc., 260 F.Supp. 639, 640 (E.D.Pa.1966); Magnetic Eng'r & Mfg. Co. v. Dings Magnetic Separator Co., 86 F.Supp. 13, 17 (S.D.N.Y.1949), appeal dismissed *as to transfer order*, 178 F.2d 866 (2d Cir. 1950) (convenience of expert witnesses not a significant factor).

5. Schlusselberg v. Werly, 274 F.Supp. 758 (S.D.N.Y.1967); *see* Ackert v. Ausman, 198 F.Supp. 538 (S.D.N.Y.1961), petition for mandamus denied *sub nom.* Ackert v. Bryan, 299 F.2d 65 (2d Cir. 1962).