**DALE METALS CORP. and Overseas Development Corporation, Plaintiffs,**

v.

**KIWA CHEMICAL INDUSTRY CO., LTD., Toyo Menka Kaisha, Ltd., Sakai Trading New York, Inc., and Sakai Trading Co., Ltd., Defendants.**

**No. 77 Civ. 3506.**

United States District Court, S. D. New York.

Dec. 27, 1977.

---

Siegel, Matson & Lasky, New York City, for plaintiffs.

Guggenheimer & Untermyer, New York City, for defendant Toyo Menka Kaisha, Ltd.

Yamada & Condemi, New York City, for defendants Kiwa Chemical Industry Co., Ltd., Sakai Trading New York, Inc. and Sakai Trading Co., Ltd.

LASKER, District Judge.

Toyo Menka Kaisha, Ltd. ("TMK") moves to dismiss the action against all defendants on the grounds of *forum non conveniens*. In the alternative, TMK seeks a stay of this action, pending completion of the arbitration proceeding that has been commenced in Japan, in which TMK is suing Overseas Development Corporation ("ODC") for moneys due under the sales agreement that underlies this case (see Exhibit N, TMK Moving Affidavit). The plaintiffs countermove to remand this case, which is here on removal, to the state court. Their motion is denied (see, *infra*, at 81, n.1). TMK's motion is granted in part and denied in part.

Dale Metals Corp. ("Dale") and its principal shareholder and affiliate, ODC, claim to have been fraudulently induced to distribute products manufactured by Kiwa Chemical Industry Co., Ltd. ("Kiwa") (¶¶ 9–12, Complaint, annexed as Exhibit C to TMK

Moving Affidavit). They further claim that after they embarked on the distribution plan, TMK, Kiwa and the two Sakai companies (Sakai Trading Co., Inc. and Sakai Trading New York, Inc.) conspired to wrest the United States toehold created by plaintiffs and to appropriate the established paths of distribution so that the two Sakai companies, rather than plaintiffs, could act as the American distributors of Kiwa products (¶¶ 19–22, Complaint).

The underlying business relationship started in July, 1975 when Hiroyuki Masuda, an employee of TMK—Kiwa's sales agent—wrote to Mort Levin, Dale's President (Exhibit C, Plaintiffs' Opposing Affidavit). Masuda expressed Kiwa's interest in creating a United States market for Kiwalite, a reflective sheeting material used for the construction of highway signs. Levin was sufficiently interested in the Kiwa proposal to visit Japan in October, 1975 (¶¶ 6, 8, Masuda Affidavit; ¶ 12, Levin Affidavit). There, he toured Kiwa's facilities and negotiated an agreement with Kiwa and TMK. Levin claims that in the course of the negotiations, it was "specifically represented to [him] that Kiwalite had not been marketed generally in the United States and that plaintiff Dale would be the exclusive representative of the product. It was only upon these representations . . . that [Levin] agreed on behalf of plaintiffs Dale and ODC to take the product on." (¶ 12, Levin Affidavit).

Plaintiffs subsequently set up marketing facilities for the American distribution of Kiwalite (¶ 13, Levin Affidavit), and, between January, 1976 and November, 1976, received 640,000 feet of material, under confirmations of sale that were signed by TMK and ODC (Exhibit E, TMK Moving Affidavit; ¶ 11, Plaintiffs' Moving Affidavit). It later came to Levin's attention that Sakai New York was (allegedly) attempting to market Kiwalite and was approaching prospective purchasers who had originally been contacted by Dale and ODC (Exhibit F, Plaintiffs' Opposing Affidavit). Negotiations followed, concerning what plaintiffs believed to be a breach of the distribution agreement. When these proved unfruitful,

plaintiffs filed this suit in the Supreme Court of the State of New York, New York County (February 14, 1977). Three months later, on May 19, 1977, TMK commenced an arbitration proceeding in Japan against ODC (Exhibit N, TMK Moving Affidavit). The proceeding was authorized by the arbitration clause that appeared on the confirmation of sale documents, under which the goods had been shipped to the United States (Exhibit E, TMK Moving Affidavit). On May 19, 1977, plaintiffs obtained an order from the state court, staying the arbitration proceeding. One day later, the defendants petitioned for removal (Exhibit S, TMK Moving Affidavit) and the case was taken up by this court.

*Forum Non Conveniens*

In denying TMK's motion to dismiss, we note that this case is not one with a merely tenuous connection to New York, *Fitzgerald v. Westland Marine Corporation*, 369 F.2d 499 (2d Cir. 1966), nor is it one that will require, in largest part, the testimony of foreign witnesses, *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448 (2d Cir. 1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976). Although, as TMK contends and plaintiffs concede, the alleged fraud and later conspiracy are claimed to have been initiated in Japan, "the illegal scheme and activities of defendants were carried out within the United States, primarily through the actions of defendant Sakai New York, but with the active participation in this country of employees and agents of defendants Kiwa and Toyo Menka" (¶ 6, Plaintiffs' Opposing Affidavit; see, in reference to alleged conspiratorial acts in New York, ¶ 5, Levin Affidavit and Exhibit F, Plaintiffs' Opposing Affidavit). In addition to the connection that this case has with New York, four of plaintiffs' five witnesses are New Yorkers (December 19, 1977 Letter of Robert Matson, Counsel for Plaintiffs) and much of the documentary evidence relevant to plaintiffs' case is located in the offices of ODC and Dale, that is, in New York. Perhaps understandably, defendants are not sure of the number or identities of

the witnesses they will call. Judging from the affidavits of defense counsel, the number of witnesses they expect—all of them Japanese—range from zero to approximately eight. However that may be, the fact that defendants may ultimately be required to call more witnesses than plaintiffs is not dispositive of a motion to dismiss for *forum non conveniens*. In light of the substantial number of New York witnesses that plaintiffs intend to call, the presence of relevant documents here, and the alleged occurrence of "furthering" acts in this state, defendants have not met, and cannot meet, the burden of showing that "the balance of [convenience] is *strongly* in favor of the defendant." *Gulf Oil v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). At best, defendants have pushed the balance into equipoise, and with it resting there, plaintiffs' choice of forum will not be disturbed.

## Stay Pending Arbitration

 TMK asks, as an alternative to dismissing this case, that the court stay this case pending arbitration.[1] As discussed above, TMK and ODC are parties to an arbitration that has already commenced in Japan, where TMK seeks payment for goods that were delivered under the confirmations of sale. Plaintiffs' opposition to the stay is based on the fact that several of the parties to this action are not subject to the arbitration clause or to the proceeding.

From the papers submitted, it is apparent that the charges against TMK and Kiwa are identical and that the harm alleged to have been suffered by ODC and Dale is also identical. Furthermore, all the defendants are claimed to share responsibility for the wrongdoings allegedly committed by the Sakai companies. In short, it is fair to say that in an arbitration proceeding between TMK and ODC, every issue that is raised here will be vigorously pressed. In such circumstances a stay is appropriate even though it affects parties who are not bound to arbitrate. *Lawson Fabrics, Inc. v. Akzona, Incorporated*, 355 F.Supp. 1146, 1151 (S.D.N.Y.), aff'd 486 F.2d 1394 (2d Cir. 1973). In *Lawson*, the plaintiffs commenced an arbitration proceeding alleging delivery of sub-standard goods and non-payment. Subsequently, the plaintiffs commenced a federal action, naming the arbitration defendant and an additional party as defendants. In reaching the decision to stay the federal proceedings, despite the presence of a "new" party who was a stranger to the arbitration, the court emphasized that, as is true in the instant case, the claims before it and the arbitrators were substantially similar:

". . . The claims against Akzona [the stranger to the arbitration] basically involve the allegation that it conspired with and encouraged Blanchard to deliver improper, mislabelled goods in order to defraud Lawson. The decision of the arbitration as to whether, in fact, Lawson has been defrauded will inevitably decide whether non-conforming and mislabelled goods were delivered, and thus will at least partially determine the issues which form the basis of the claim against Akzona. . . .

1. In support of their motion to remand, plaintiffs advance the unusual contention that the time drafts by which payment for the Kiwalite was made supersede the confirmations of sale. The latter contain arbitration clauses. The former do not. Since removal was based on the existence of the arbitration agreement, 9 U.S.C. § 205, the alleged disappearance of the agreement is said to compel remand. Plaintiffs offer no authority for the proposition that an instrument of payment supersedes the underlying agreement that gives rise to the obligation to pay. If this were true, every ordinary check issued to pay for, say, a bargained-for sale of goods would dissolve the underlying contract.

Plaintiffs also argue that removal here was untimely because the petition for removal was not filed "within thirty days after the receipt by the defendant[s] . . . of a copy of the initial pleading . . ." 28 U.S.C. § 1446(b). Nothing could be plainer than the language of 9 U.S.C. § 205, which plaintiffs have ignored and which, in pertinent part, provides that in cases involving arbitration agreements, "the defendants may, at any time before the trial thereof, remove" to federal court (there is no dispute that the case was removed before trial). Given an explicit time rule contained in § 205, the notion that the time provision of 28 U.S.C. § 1446(b) applies is totally without merit.

82

"Since the arbitration proceedings are in progress, it cannot be argued that there is likely to be an unreasonable delay of this Federal action . . ." 355 F.Supp. at 1151.

Finally, the court noted that refusal to stay the federal action would thwart the pronounced federal policy in favor of arbitration. The reasoning of the court in *Lawson Fabrics Inc.*, is applicable to the case before this court and is persuasive.

The motion to remand is denied. The motion to stay is granted on condition that all defendants agree in writing within thirty days to submit to the pending arbitration proceeding and to be bound by any award granted by the arbitrators and to allow Dale to participate as a party in the arbitration if it wishes. In the event defendants do not accept the conditions stated, the motion to stay will be denied upon further application.

Submit order on notice.