Helen ABRAMSON, Plaintiff,

v.

INA CAPITAL MANAGEMENT CORP. et al., Defendants.

No. 78 C 627.

United States District Court, E. D. New York.

Nov. 6, 1978.

Schoengold & Sporn, New York City, for plaintiff by Samuel P. Sporn, New York City, Kenneth A. Elan, Bayside, N. Y.

Seward & Kissel, New York City, for defendants by Eugene P. Souther, Kenneth J. Kelly, New York City, and Drinker Biddle & Reath by Stewart Dalzell, Timothy C. Russell, Philadelphia, Pa.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This action, brought derivatively on behalf of INA Investment Securities, Inc. (the

"Fund"), charges defendants INA Capital Management Corporation (the "Manager") and thirteen past and present employees, officers and directors of the Fund and the Manager with various violations of the Investment Company Act of 1940, 15 U.S.C. § 80a–1, *et seq.* (the "Act"), and the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1, *et seq.* (the "Advisers Act"). All defendants have moved, pursuant to Rule 12(b)(3), F.R.Civ.P., for an order dismissing the action for improper venue. Alternatively, they move, pursuant to Title 28, U.S.C. § 1404(a), for an order transferring the action to the United States District Court for the Eastern District of Pennsylvania. Thus our inquiry is twofold. First, it must be determined whether venue has been properly laid in this district. The resolution of this question in turn determines whether the second inquiry—whether a discretionary transfer is warranted—should be analyzed under the provisions of 28 U.S.C. § 1404(a) or under § 1406(a).

The facts which bear on the question of venue are briefly summarized. Plaintiff alleges essentially that the defendants have violated the above-mentioned Acts because (1) there was a lack of statutorily-required "disinterest" on the part of certain directors (Complaint ¶¶ 11, 12, 15 & 17); (2) the directors failed to "request and evaluate" and the Manager failed to provide certain information before the advisory agreements here in issue were approved (Compl. ¶ 16); (3) the management fees were excessive (Compl. ¶¶ 18, 19).[1]

Plaintiff claims that "[t]he transactions complained of were accomplished directly or indirectly by the use of the United States mails and other instrumentalities of interstate commerce, many of which were in the Eastern District of New York." (Compl.

¶ 6.) She affirms in a supporting affidavit that she has resided in the Eastern District of New York continuously since her initial purchase of Fund shares in 1973. She further states that she has received and continues to receive Fund solicitations, proxy materials and other Fund mailings in this district on a regular basis (Abramson Affidavit). These facts, she contends, support her choice of venue.

Defendants move to dismiss for improper venue alleging that (1) the corporate defendants do not have their principal places of business, and do not transact business, in this district; (2) no act or transaction alleged to constitute a violation of the Act or the Advisers Act occurred in this district; and (3) none of the individual defendants is an inhabitant of, or transacts business in, this district. Defendants contend in substance that *all* the acts complained of—the negotiation, execution and consummation of the agreements and the statutory violations—occurred outside the district, and *all* the individual defendants reside and work outside the district. We assume for purposes of this motion that the above allegations are true.

### Venue Under the Investment Company and Advisers Act

The propriety of plaintiff's choice of venue must be determined by reference to the venue provisions in § 44 of the Act, 15 U.S.C. § 80a–43 and § 214 of the Advisers Act, 15 U.S.C. § 80b–14. These sections provide that venue is proper in a civil suit in the district where (1) any act or transaction constituting the violation occurred; (2) the defendant is an inhabitant; or (3) a defendant transacts business.[2] It is undisputed that venue here is predicated on the first of these provisions.

---

1. She also alleges that the New York Business Corporation Laws as well as duties imposed by State law fiduciary principles have been violated (Complaint ¶¶ 21, 22, 24 & 26).

2. These provisions are nearly identical to the venue provisions of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. The meaning of the phrase, "wherein any act or transaction constituting the violation occurred" has been

construed to be the same in all the Acts. See *Zorn v. Anderson*, 263 F.Supp. 745, 747 (S.D.N.Y.1966). Since there has been virtually no other authority construing the phrase in the context of the Investment Company Act or the Advisers Act alone, we must look to its construction in the Securities Exchange Act cases for guidance.

Plaintiff argues she need only show that an act of material importance to the consummation of the alleged scheme took place within the district to lay venue under the Acts. For this proposition, she cites a number of cases generally decided under the Securities Exchange Act and involving various species of securities fraud. See, *e. g.,* *Zorn v. Anderson,* 263 F.Supp. 745 (S.D.N.Y.1966); *Schneider v. Sears,* 265 F.Supp. 257 (S.D.N.Y.1967); *Hooper v. Mountain States Securities Corp.,* 282 F.2d 195 (5 Cir. 1960). She also suggests that venue is proper even if the majority of acts constituting the violation occurred outside the district as long as one act in furtherance of the scheme is committed within (Plaintiff's Reply Memorandum at 5). In essence, she contends that the proxy solicitations in this district constituted an integral part of the violations complained of and satisfy the requirements for venue under the Acts.

Defendants argue that plaintiff's position suffers from a fatal flaw. The proxy solicitation aimed at obtaining shareholder approval for the challenged advisory agreements cannot be a material act, they contend, because there is no allegation in the complaint that the proxy statements or any other documents were false or misleading, and the complaint itself does not allege fraud, misrepresentation or dishonest scheme. Defendants argue that the complaint is utterly devoid of any reference to a fraudulent scheme, and in fact none of the acts complained of was fraudulent or misleading. Rather, it is suggested that any wrongful act would have occurred before the proxy material would have been distributed. For these reasons, defendants urge that plaintiff's reliance on cases alleging fraud is misplaced.

While the issue is not free from doubt, we conclude that in the specific circumstances of the case plaintiff's position is the more meritorious. We reach this result on the basis of our application of the "materiality test," employed in situations where, as here, the venue conferring act is not itself alleged to be illegal, but is on its face a neutral act or transaction. See *Hooper v. Mountain Securities Corp., supra; Mariash v. Morrill,* 496 F.2d 1138, 1144 (2 Cir. 1974); *Kogok v. Fields,* 448 F.Supp. 197, 199–200 (E.D.Pa.1978); *Mayer v. Development Corp. of America,* 396 F.Supp. 917, 928–30 (D.Del. 1975). In applying this test, a court must examine the relationship between the venue conferring act and the offenses alleged in the complaint. See *Kogok v. Fields, supra* at 199–200.[3]

The relationship of the proxy solicitation to the offenses alleged in this complaint is so intimate as virtually to mandate a finding of the proxies' materiality. The language of the Investment Company Act, 15 U.S.C. § 80a–15, sets this forth:

"It shall be unlawful for any person to serve or act as investment adviser of a registered investment company, except pursuant to a written contract, which contract, whether with such registered company or with an investment adviser of such registered company, has been approved by the vote of a majority of the outstanding voting securities of such registered company . . . ."

Consequently, it is beyond peradventure that the proxy solicitations were a material part of the alleged violations. Without shareholder approval, the agreements could apparently never have gone into effect.[4]

**3.** In *Kogok* plaintiffs alleged a conspiracy based on certain misrepresentations in a prospectus and certain reports but claimed no violation in the mailings themselves. Thus although the financial statements were allegedly misleading, liability was not predicated on the statements. The court had little difficulty finding the reports material to the conspiracy and found the mailings sufficient to support venue even though *none of the plaintiffs or defendants was found in, or was an inhabitant of, the district.*

**4.** We have noted defendants' argument that, in any event, under Section 36(b)(2) of the Investment Company Act, shareholder approval of an investment management agreement is not dispositive in assessing its validity (Defendants' Reply Memorandum at 7). Even assuming this statement is correct in the circumstances of this case, we believe the shareholder approval was a sufficiently material act for venue purposes.

Defendants' final argument, that since plaintiff claims the advisory agreements were void

We find this relationship sufficiently close to satisfy the most stringent application of the materiality test.

 Nor is it incongruous that the alleged wrongful acts might have preceded the actual mailing of the proxy material into the district. The success of these acts depended upon the ultimate approval by the shareholders. Where the validity of the advisory agreement contracts rests upon such approval, the mailing of proxies into the district is sufficient to establish proper venue even where the venue conferring mailing is merely a statutory requirement under the Acts. A contrary conclusion would not conform to the apparently liberal venue provisions of the Acts and would make shareholder enforcement of the provisions of the Acts much more difficult.[5]

### Transfer Under 28 U.S.C. § 1404(a)

Since venue in this district is proper, we now must turn to defendants' alternative motion to transfer the action to the United States District Court for the Eastern District of Pennsylvania for the convenience of the parties and witnesses, and in the interest of justice. It is apparently conceded that the Eastern District of Pennsylvania is one in which the action "might have been brought" within the meaning of § 1404(a). Thus our inquiry is limited to whether convenience of the parties and witnesses and the interests of justice require transfer.

 Although § 1404(a) modifies the doctrine of *forum non conveniens* and per-

mits transfer upon a lesser showing of inconvenience than required under that doctrine, *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S.Ct. 544, 99 L.Ed. 789 (1955); 1A Moore, Federal Practice ¶ 0.204 at 2205–06 (2d ed. 1977), a movant must still satisfy a court by a clear showing that the balance of conveniences falls toward him. See *First National City Bank v. Nanz, Inc.,* 437 F.Supp. 184, 188 (S.D.N.Y.1975). In assessing this balance, the court must weigh (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel the presence of unwilling witnesses; (5) the cost of obtaining the presence of witnesses; (6) the problems involved in trying a case expeditiously and inexpensively; (7) where the events took place; and (8) the interests of justice. See, e. g., *Car-Freshner Corp. v. Auto Aid Mfg. Corp.,* 438 F.Supp. 82, 85 (N.D.N.Y.1977); *Scheinbart v. Certain-Teed Products Corp.,* 367 F.Supp. 707 (S.D.N.Y. 1973); *Schneider v. Sears,* 265 F.Supp. 257, 261 (S.D.N.Y.1967).

 Although plaintiff's choice of forum is normally entitled to considerable weight, two factors in this action undermine her choice. First, where the operative facts underlying the cause of action have no material connection with the district, plaintiff's choice of forum carries less weight. *Foster v. Litton Industries, Inc.,* 431 F.Supp. 86, 87 (S.D.N.Y.1977), and cases cited therein; *Credit Alliance Corp. v. Na-*

---

*ab initio,* shareholder approval is a nullity in itself and cannot be a vital act conferring venue here, is totally without merit.

**5.** In *Hilgeman v. National Insurance Company of America,* 547 F.2d 298 (5 Cir. 1977), the court in construing the venue provision of the Securities Exchange Act stated that the "act" contemplated by the statute need not be crucial, nor must the fraudulent scheme be hatched in the forum district. It found the standard expressed in *Hooper v. Mountain Securities Corp., supra,* compatible with that reached by the Seventh Circuit in *Bath Industries v. Blot,* 427 F.2d 97, 114 (7 Cir. 1970) (one act which is more than an immaterial part of the allegedly illegal events), and concluded that an annual premium notice sent to plaintiff in Alabama was sufficient for venue purposes.

The court noted that Rule 10b–5 is not confined to misrepresentations and omissions, but reaches any "device, scheme or artifice to defraud" or any "act, practice which operates to defraud." We agree with the principle, without intimating any opinion as to the substantive theory espoused by the *Hilgeman* court, that the Investment Company and Advisers Acts must be viewed expansively for venue purposes to accomplish their remedial purpose.

Since we have concluded that venue is proper as to the corporate defendants, venue is proper as to the individual defendants on a "co-conspirator theory." See *Zorn v. Anderson,* 263 F.Supp. 745, 748 (S.D.N.Y.1966); *Hilgeman v. National Insurance Company of America, supra* at 302 & n. 12.

tionwide Mutual Insurance Co., 433 F.Supp. 688 (S.D.N.Y.1977). Second, plaintiff's choice is given even less weight in a shareholder's derivative suit in which there are numerous prospective plaintiffs. See, e. g., *Scheinbart v. Certain-Teed Products Corp.*, supra at 711; *Saminsky v. Occidental Petroleum Corp.*, 373 F.Supp. 257, 258–59 (S.D.N.Y.1974); *Silverman v. Wellington Management Co.*, 298 F.Supp. 877, 879 (S.D.N.Y.1969); *Schlusselberg v. Werly*, 274 F.Supp. 758, 763 (S.D.N.Y.1967); *Foster v. Litton Industries, Inc.*, supra at 87.

■ As noted in our discussion of the propriety of venue in the first instance, none of the acts complained of in the complaint occurred in this district. This conclusion is supported adequately by the Delany and Riddell affidavits filed by defendants and is not seriously contested. Thus, in view of this fact and the derivative nature of this case, plaintiff cannot claim that her convenience is a weighty consideration. Upon careful review of the other factors, discussed below, we conclude that defendants have made a clear showing that transfer is warranted for the convenience of the witnesses and in the interest of justice.

Although their affidavits do not outline the material nature of their expected testimony, see *Car-Freshner Corp.*, supra at 85, defendants do argue in their brief that plaintiff will necessarily seek the testimony of each individual defendant in order to establish a *prima facie* case under her complaint (Defendants' Memorandum at 17). Thus the imposition of personal liability on these defendants and the nature of the action itself suggest the materiality of their testimony. It is sufficient that defendants affirm through their representative that none works, resides or has a reason to travel regularly to this district to establish the inconvenience to defendants of litigation here. Moreover, the concentration of most of the defendants in the Philadelphia area, most of whom work there, militates toward a transfer. See *Schreiber v. Northwestern*

*Mutual Life Insurance Co.*, 361 F.Supp. 625, 626 (S.D.N.Y.1973).

The convenience of non-party witnesses also favors transfer. Defendants argue in their brief that they will in all probability wish to call many of the same non-party witnesses—past or present employees or directors of the Fund, the Manager or INA—who will be required to make out plaintiff's *prima facie* case (Defendants' Memorandum at 18), most of whom reside in or near the Philadelphia area (Delany Affidavit ¶ 40). Moreover, it is argued that the amenability of such persons to process issuing out of this district is questionable and therefore another factor requiring transfer.

Plaintiff argues in opposition that she intends to call a number of expert witnesses, all of whom reside and work in New York. While we note that plaintiff's affidavit is clearly deficient, confined solely as it is to a recitation of her actual residence and the mailings she alleges support venue here, we credit her argument in brief. We conclude, however, that this factor is not entitled to great consideration in our inquiry, see *Schlusselberg v. Werly*, supra at 764, and defendants have on balance the better of the argument.

Defendants also contend that most of the documentary evidence is in Pennsylvania or in Boston. This is not seriously contested, although plaintiff argues that it is mere speculation to consider the documentary sources of proof at this time. It is further argued by defendants that beyond the direct costs involved in litigating in this district, there are indirect costs which require transfer in the interest of justice. These include the inconvenience and disruption to the individual defendants and to the *corporate* defendants in their day-to-day operations by travel to and attendance at proceedings in this district. On balance we conclude that proceedings in Philadelphia will be less costly and disruptive than in this district and hold that defendants have clearly shown the necessity of a transfer.[6]

---

6. We also note three other factors considered by the court. First, there is the possibility that Pennsylvania law will govern certain issues in this action. Although defendants do not allege that novel and complex issues of State law are involved, the ability of a district court sitting in

Where, as here, the acts complained of have no material connection to this district and suit is brought derivatively on behalf of a corporation located in the proposed transferee district, plaintiff's choice of forum is entitled to little weight despite her residence in this district. Although we have concluded that the proxy solicitations were sufficient for venue purposes under the Acts, we cannot conclude that those mailings were "furthering" acts such as to make this action's connection to this district more than tenuous. See *Dale Metals Corp. v. Kiwa Chem Industry Co.,* 442 F.Supp. 78, 81 (S.D.N.Y.1977).

Accordingly, defendants' motion to transfer this action to the United States District Court for the Eastern District of Pennsylvania is granted.

SO ORDERED.

The Clerk of the Court is directed to transfer this action in accordance with this order. The Clerk is further directed to furnish copies of this memorandum and order to counsel for the parties.

Pennsylvania to deal with any such issues is apparent. See *Vaughn v. American Basketball Ass'n,* 419 F.Supp. 1274, 1278 (S.D.N.Y.1977); *Credit Alliance Corp. v. Nationwide Mutual Insurance Co., supra; Scheinbart v. Certain-Teed Products Corp., supra* at 710. Second, calendar conditions in the respective districts also favor transfer. Although we need not credit defendants' unsupported hearsay reportage, see *Can-Base Productions, Ltd. v. Portrait Records,* 445 F.Supp. 777, 779 (S.D.N.Y.1978), we only note that it is incontestable that the Eastern District of New York has one of the most congested calendars in the country. Finally, the convenience to plaintiff's counsel is simply not a consideration in our analysis. See *Vaughn v. American Basketball Ass'n, supra* at 1277.