Stephen BERG, Bank of Bermuda, as trustee, Frances M. Blackwell, William B. Bolton, Johnne B. Burnett, Anna Mae Burrell, Caroline G. Casler, Muriel Clark, Van Wyck Coddington, Crabtree Enterprises, Robert Grace, as trustee, D. Richard Grace, F. Cecil Grace, Howard E. Grace, Jane R. Grace, John S. Grace, Lori Grace, Morgan H. Grace, Nancy Terrell Grace, Natalie W. Grace, Oliver R. Grace, Jr., Robert M. Grace, Nancy E. Hussey, Ruth Jervis, as trustee, William and Marjorie Kasso, Anne Kelly, as trustee, Angus C. Littlejohn, Gretta Lodes, Frank R. Maclear, Suzanne Maclear, Cynthia B. Muir, N. Price Paschall, Charles Robbins, as trustee, Gwendolyn Grace, Doris Royce, Oliver R. Grace, Sr., as trustee, Gerald I. White, as trustee, Frances Rice Swan, Kingsley Swan, Jr., Bella Triebwasser, Gulielma R. Valentine, Trudy Wilkinson, Blackwell Williams, Marjorie Woodruff, and Richard and Paulette Mandelbaum, Plaintiffs,

v.

FIRST AMERICAN BANKSHARES, INC., FGB Holding Corporation, Credit and Commerce American Holdings, N.V., Credit and Commerce American Investment, B.V., Kamal Adham, Abdullah Darwaish, Faisal Saud Al Fulaij, Robert A. Altman, Jack W. Beddow, Justin D. Bowersock, Eugene B. Casey, Clark M. Clifford, James M. Gavin, Elwood R. Quesada, B. Francis Saul, II, Robert G. Stevens and Stuart Symington, Defendants.

No. 83 Civ. 6002 (MP).

United States District Court,
S.D. New York.

Dec. 19, 1983.

Golenbock, Eiseman, Assor & Bell, Berner & Berner, P.C. by David J. Eiseman,

Jeffrey T. Golenbock, New York City, for plaintiffs.

Wachtell Lipton, Rosen & Katz, New York City, for defendants; Paul C. Warnke, J. Griffin Lesher, Robert P. Reznick, Clifford & Warnke, Washington, D.C., of counsel.

## OPINION

MILTON POLLACK, Senior District Judge.

The defendants who have appeared herein have moved for a transfer of this suit, pursuant to 28 U.S.C. § 1404(a), on the grounds that a purported class action previously filed and substantially related was heretofore removed from this Court to and is presently pending before the United States District Court for the District of Columbia and that all the factors to be considered by this Court in deciding such a motion warrant transfer of this case to that District.

It appears that the plaintiffs in this action are united in the sense that the same corporation acts as investment counsel to virtually all of them and that to all intents and purposes this suit is essentially a "tag-along" suit to the one now pending in the District of Columbia.

Plaintiffs oppose such transfer, contending that the class suit in the District of Columbia has already been through discovery and pretrial procedures, that the convenience of the plaintiffs would not be served, that it is unlikely that a consolidation of the suits would be ordered because of the disparity of preparation for trial, and that issues of law are now *sub judice* which might terminate the litigation. Parenthetically, such reasons reinforce the need and desirability for transfer in the interests of judicial husbandry.

For the reasons appearing hereafter, the motion for transfer should be granted.

This and the District of Columbia suit both hinge their attack on the same proxy statement and the same resulting "going private" merger and contend that they violated the rights of the security holders who

have brought these suits. The first suit was brought on March 29, 1982 as a class claim and was transferred to the District of Columbia on June 30, 1982. The instant suit was commenced the following year, on August 11, 1983.

Both actions arise out of a "going private" merger involving defendant Financial General Bankshares, Inc. ("Financial General"), a Virginia corporation, pursuant to which all publicly held shares of stock in the corporation, including those of the plaintiffs in both suits, were cancelled and converted into a right to receive a specified amount of cash. As a result of this merger, the entire equity interest in Financial General was acquired by FGB Holding Corp. ("FGBHC"), another Virginia corporation.

The merger was effected under and pursuant to the laws of the state of Virginia.

This action for money damages alleges violation of federal securities laws, common law fraud, and breach of fiduciary duties in connection with the merger, which was approved more than one year ago on August 11, 1982 by over two-thirds of the relevant shareholders of the Class A Common Stock held by the plaintiffs in the two litigations.

The plaintiffs respectively claim that the defendants engaged in a "fraudulent scheme" to acquire the Class A Common shares by "misleading" and "deceiving" two-thirds of the Class A shareholders through a Proxy/Information Statement to vote in favor of a proposed plan of merger by which the Class A shareholders would receive $28.00 per Class A share. Under Virginia law, a two-thirds vote was required for such shares to be converted into the right to receive cash. The basis of plaintiffs' claim is their view that they were not paid enough for their Class A stock.

The challenged Proxy/Information statement is alleged to have been materially false and misleading in several respects, including the following: it implied that the Class A Common Shares had historically

traded at a substantial discount to the Common Shares and had a lower book value at the time of the proxy solicitation; it misstated that the relative value of the shares of the two classes was linked to differences in voting power; it omitted various other facts which would have indicated that the conversion price specified in the merger agreement for the Class A Common Shares was below fair value; and it omitted to state that certain tax benefits would accrue to the acquiring group only if the merger agreement was approved by the requisite two-thirds of the Class A Common Shares.

Plaintiffs claim that the manner and method by which their shares were cancelled and converted violated Sections 10(b), 14(a), and 13(e) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78m(e), and 78n(a), respectively, and Rules 10b–5, 14a–9, and 13e–3 promulgated thereunder, and also constituted a fraud upon plaintiffs in violation of the common law of Virginia and a breach of common law fiduciary duties.

In addition, plaintiffs assert that the acquiring group, the defendants Adham, Al Fulaij, Darwaish, and CCAI violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* In this regard, the complaint alleges that these defendants were an "enterprise" within the meaning of the RICO statute and participated in a pattern of racketeering activity involving fraud in connection with the sale or purchase of securities.

In all pertinent respects, this is a District of Columbia case. Virtually all of the operative events which are the subject of this lawsuit occurred in and around Washington, and that is where virtually all relevant documents and likely witnesses may be found. The Southern District of New York was not the site of a single transaction or occurrence likely to have bearing on the merits of this action, and this District's sole link to the proceeding is the possible residence of certain of the shareholder plaintiffs or their trustees.

*The Question of Transfer Under 28 U.S.C. § 1404(a)*

The statute governing transfer of cases in the district courts, 28 U.S.C. § 1404(a), states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

It is not disputed that the District Court for the District of Columbia is, pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, a district where this case might have been brought and that transfer is therefore possible.

■■■ Decisions under § 1404(a) are committed to the discretion of the trial judge. *E.g., Brierwood Shoe Corp. v. Sears Roebuck & Co.,* 479 F.Supp. 563, 565 (S.D.N.Y.1979). Plaintiffs' choice of forum is entitled to considerable weight, *Abramson v. INA Capital Management Corp.,* 459 F.Supp. 917, 921 (E.D.N.Y.1978), and the burden is upon the defendant to make "a clear cut showing ... that convenience and justice for all the parties demands that the litigation proceed elsewhere." *United States Barite Corp. v. M.V. Haris,* 534 F.Supp. 328, 331 (S.D.N.Y.1982).

The statutory standards of § 1404(a) require the weighing of several factors, which include the following:

> (1) the convenience to parties; (2) the convenience of witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems indicating where the case can be tried more expeditiously and inexpensively; and (7) the interests of justice, a term broad enough to cover the particular circumstances of each case, which in sum indicate that the administration of justice will be advanced by a transfer.

*Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967) (Weinfeld, J.).

*Related Action in Transferee Court*

The first and major reason advanced by defendants in support of their transfer motion is the pendency before the District Court of the District of Columbia of a closely related lawsuit, *Kas v. Financial General Bankshares, Inc.*, C.A. No. 82–1996 (D.D.C.).

The *Kas* lawsuit is an as yet uncertified class action brought against essentially the same defendants as are named herein on behalf of all former holders of Common Shares and Class A Common Shares of Financial General similarly situated.

The *Kas* action was filed in the Southern District of New York in late March, 1982, as a challenge to the Adham Group's March 3, 1982 tender offer. Following a June 18, 1982 pre-motions conference before the Honorable William C. Conner, at which the topic of transfer was discussed, the *Kas* litigants stipulated to, and Judge Conner so ordered, a transfer to the United States District Court for the District of Columbia.

As presently amended, the *Kas* complaint not only challenges the legality of the Adham Group's early acquisition activity and the March 3, 1982 tender offer, but also alleges that the defendants violated Section 14(a) of the Exchange Act, and Rule 14a–9 promulgated thereunder, by failing to make certain disclosures in the mid-1982 Proxy Statement, the same statement which lies at the heart of the instant case. These alleged non-disclosures concern past allegations that defendant Darwais had embezzled funds from the ruler of Abu Dhabi.

A motion is now pending before the *Kas* Court to allow the *Kas* plaintiffs to amend their complaint a second time. Their proposed second amended complaint charges that the Proxy Statement was materially false, "had the effect of misleading the [Class A Common Share holders] into believing that the $28 per share offer price was fair," and thereby advanced an unlawful scheme to acquire the Class A Common Shares at a price below that paid for the Common Shares, all in violation of Section 10(b) and 14(a) of the Exchange Act and the rules promulgated thereunder.

The defendants moving in the instant action represent that the *Kas* plaintiffs no longer challenge the legality of the defendants' original tender offer, and that the legality of the defendants' conduct surrounding the "going private" merger is now the exclusive focus of the *Kas* litigation.

Defendants argue that the facts and legal questions at issue in the instant action and in *Kas* overlap so substantially that the interests of judicial economy and the importance of avoiding conflicting results warrant transfer of this action to the District of Columbia, where this case may be consolidated with *Kas* or otherwise brought before the same Judge to whom *Kas* has been assigned.

Plaintiffs, noting that an order has been entered terminating discovery in *Kas* and that defendants in that action have moved for summary judgment, contend that the *Kas* litigation is at such an advanced stage that consolidation would be improper and that therefore transfer would not promote judicial economy. In response, the defendants contend that the pendency in *Kas* of a class certification motion and a motion to amend the complaint, as well as the *Kas* plaintiff's present unpreparedness for trial, belie the claim that the *Kas* litigation is at a stage too advanced to permit consolidation.

Plaintiffs further contend that the subject matter of the two suits raise substantially different legal issues—referring in particular to the RICO count present only in the instant case—and that therefore the suits are not sufficiently related to warrant a trial before the same judge in a single forum.

*Operative Events and Transactions*

Defendants additionally argue that the operative events and transactions in the instant case occurred in Washington, D.C., and that this is an additional reason in favor of transfer. In this regard, defendants point to the following facts:

(1) First American (formerly Financial General) and its parent corporation both maintain their corporate offices and principal place of business in Washington, D.C.

(2) The negotiations between the Adham Group and Financial General's management leading up to the mid-1980 acquisition agreement, and the signing of that agreement, took place in Washington, D.C.

(3) The litigation challenging the Adham Group's early acquisition activity was conducted in the United States District Court for the District of Columbia.

(4) It was in Washington, D.C., that the new Board of Directors met in June, 1982 to review and approve the proposed plan for merger by which the Class A Common Shares were cancelled and converted into a right to receive $28.00 per share.

(5) There is an absence of any events of significance to this lawsuit which occurred in the Southern District of New York.

Plaintiffs assert that there are significant connections between New York and the operative events and transactions of this case, in particular the facts that (1) the securities in question were traded on the American Stock Exchange; (2) the allegedly unlawful proxy statement was sent to certain plaintiffs in New York; and (3) most plaintiffs resided in New York at the time of their alleged injury.

*Convenience of Parties and Witnesses*

Defendants argue that because First American maintains its corporate office in Washington, D.C., because most of the defendant directors reside in or work in the Washington, D.C., metropolitan area, and because each of the New York plaintiffs would have at most a limited role to play at a trial of this action, the convenience of parties and witnesses militate in favor of transfer to Washington, D.C.

Plaintiffs contend that those residing in New York would have to travel to Wash-

ington for at least part of the litigation and that the relative burden of such travel falls more heavily upon them than upon the defendant corporations. In any event, plaintiffs contend that the ease of travel between Washington and New York mitigates any problems of inconvenience to the defendants or their potential witnesses.

*Location of Documentary Proof*

Defendants argue that an additional fact favoring transfer to Washington, D.C., is the location there of documentary proof relevant to this action. Plaintiffs state in response that there is no indication that such records are voluminous, that photocopies will be acceptable during discovery, and that therefore no problem of inconvenience will be presented by the presence of relevant documents in Washington, D.C.

*Transfer is Appropriate*

The Court finds, under all the relevant circumstances, that transfer of this case to the United States District Court for the District of Columbia is warranted.

The foremost reason supporting this result is the obvious advantage of centralizing in a single forum all the litigation concerning the lawfulness of the "going private" merger which is the focus of both the instant case and the *Kas* action.

The foregoing examination of the pleadings in the instant case and in *Kas* reflect that the two cases are intimately related and "hinge upon the same factual nuclei." *Durham Productions v. Sterling Film Portfolio*, 537 F.Supp. 1241, 1244 (S.D.N.Y. 1982). Pendency of such a related action in the transferee forum weighs heavily in favor of transfer, not only because "[l]itigation of related claims in the same tribunal ... facilitates efficient, economical and expeditious pre-trial proceedings and discovery," but also because it "avoids duplicitous [sic] litigation and inconsistent results." *Id.* at 1243 (quoting *National Super Spuds, Inc. v. New York Mercantile Exchange*, 425 F.Supp. 665, 667 (S.D.N.Y. 1977).

Even if it were improbable that the two cases would be consolidated upon trans-

fer—and at this point this is purely a matter of speculation, as amply illustrated by the parties' conflicting versions of the present status of the *Kas* litigation—the fact that they are intimately related remains a strong reason for transfer.

The argument that there may be no realistic possibility of consolidation since the District of Columbia action has been through pretrial discovery and awaits trial is an argument for the plaintiffs in that action to make, not the New York plaintiffs. The District of Columbia plaintiffs would not be prejudiced by the addition of more parties to the District of Columbia controversy since they explicitly sued in a class mold for the benefit of the New York and other security holders.[1]

■ If the District of Columbia plaintiffs believe that the addition of these parties will somehow work a prejudice upon their action, then perhaps a stay will be appropriate, but that does not defeat a transfer under § 1404(a).

This is the best time for transfer since the legal issues involved in this action are now under test in the District of Columbia court, and because questions of claim and issue preclusion and of *res judicata* could be avoided by transfer.

The major operative events and transactions of which plaintiffs complain took place in Washington, most of the director defendants and the central corporate defendant are located in Washington, and documentary evidence of likely relevance is located in Washington.

On the totality of these circumstances, and in the interest of justice, transfer is required.

Accordingly, defendant's motion for a change of venue to the United States Dis-

trict Court for the District of Columbia is granted. The Clerk is directed to remit *forthwith* to that Court (1) certified copies of this Court's opinion ordering the transfer, of its order, and of the docket entries in the case, and (2) the originals of all other papers on file in the case.

SO ORDERED.

---

**1.** While the feasibility of consolidation upon transfer is a significant factor in a transfer decision such as that made herein, the likelihood of consolidation is not a prerequisite to the taking into account of a related action in the transferee forum. As stated in *A.J. Industries, Inc. v. United States District Court for the Central District of California,* 503 F.2d 384, 389 (9th Cir.1974):

To hold that the pendency of an action between the parties in another district could not be considered unless the action could be consolidated would unnecessarily limit the factors that should be considered in making a transfer determination....