JIM WALTER HOMES, INC. et
al., Petitioners,

v.

Jose B. VALENCIA et al., Respondents.

No. C–3608.

Supreme Court of Texas.

April 17, 1985.

Rehearing Denied June 12, 1985.

Atlas and Hall, Lisa Powell, David Hockema and Charles W. Hury, McAllen, for petitioners.

B. Miles Latham, Corpus Christi, for respondents.

HILL, Chief Justice.

The questions considered are whether the trial court properly calculated damages resulting from a knowing violation of the Texas Deceptive Trade Practices-Consumer Protection Act (DTPA), TEX.BUS. & COM. CODE ANN. §§ 17.41–.63 (Vernon Supp. 1985); whether there is some evidence to support the jury's finding that Jim Walter Homes, Inc. and Mid-State Homes, Inc. (Jim Walter Homes) knowingly violated the DTPA; and whether the Valencias gave Jim Walter Homes sufficient notice of their DTPA claim. Jim Walter Homes was found to have violated both the DTPA and the Texas Consumer Credit Code (Credit Code), TEX.REV.CIV.STAT.ANN. art. 5069–6.01 to 6.09 (Vernon Supp.1985). Judgment was rendered that the Valencias recover $49,728 based upon the DTPA violation and that Jim Walter Homes forfeit all amounts owing on the construction of the house based upon the Credit Code violation. The court of appeals affirmed. 679 S.W.2d 29. We modify the judgment of the court of appeals and affirm that judgment as modified.

Jose and Elodia Valencia entered into a contract with Jim Walter Homes for the construction of a house on the Valencias' property. Under the terms of the contract, the Valencias were to pay the total price of the house in 180 monthly installments after "release" of the house to them. Jim Walter Homes secured payment of the debt by executing a Mechanics Lien Contract with Power of Sale.

Jim Walter Homes "released" the house to the Valencias and awaited payment. The Valencias did not make payment and after the third monthly payment had accrued, Jim Walter Homes accelerated the note and attempted foreclosure. The Valencias then sought to enjoin the foreclosure and to recover damages under the DTPA and the Credit Code. Jim Walter Homes counterclaimed for the amounts due under the contract. The alleged Credit Code violations and Jim Walter Homes's counterclaim were tried to the court. The alleged DTPA violations were tried to a jury.

The jury found that Jim Walter Homes had represented that the house was constructed in a good, substantial, and workmanlike manner but that it was not so constructed; that this act was a producing cause of the Valencias' damages; and that the Valencias had sustained actual damages of $12,682. The jury further found that Jim Walter Homes "knowingly" made the misrepresentations to the Valencias and the jury awarded the Valencias the sum of $38,046 in discretionary additional damages based on the knowing violation. Based on these jury findings and after a remittitur of $3000, the trial court rendered judgment for the Valencias on their DTPA claim for $49,728.

We first consider the method used to calculate the Valencias' damages. Section 17.50(b)(1) of the DTPA provides that a consumer who prevails may obtain:

> the amount of actual damages found by the trier of fact. In addition the court shall award two times that portion of the actual damages that does not exceed $1000. If the trier of fact finds that the conduct of the defendant was committed knowingly, the trier of fact may award not more than three times the amount of actual damages in excess of $1000.

The trial court arrived at the $49,728 figure by first awarding the Valencias $12,682 in actual damages under sentence number one of section 17.50(b)(1). Next, the court awarded them $2000 under the second sentence. To these amounts, the trial court added three times the amount of their actual damages in excess of $1000. This method of calculation resulted in quadrupling actual damages less $1000. Relying on

what it believed to be the plain meaning of the statute and the apparent legislative intent in amending section 17.50(b)(1), the court of appeals affirmed this method of calculation.

The court of appeals holding conflicts with another recent court of appeals decision. In *Jasso v. Duran*, 681 S.W.2d 279 (Tex.App.—Houston [14th Dist.] 1984, writ pending), the court modified the trial court's judgment to award the prevailing consumer who received the maximum award on his claim an amount equal to three times actual damages. The court reasoned that section 17.50(b)(1) clearly disallowed a quadrupling of damages and that the legislature never intended to authorize quadrupling under any circumstances.

The present case is governed by the 1979 amendments to the DTPA. This is the first time this court has been presented with the issue of how damages should be calculated under section 17.50(b)(1) as it was amended. We noted in *Martin v. McKee*, 663 S.W.2d 446, 447 (Tex.1984), that there are three types of damages described by the section; however, the only issue we considered in that case was whether the plaintiff waived recovery of discretionary damages under sentence three of the section by failing to request a special issue on these damages. In *Luna v. North Star Dodge Sales, Inc.*, 667 S.W.2d 115, 116 (Tex.1984), we recited the trial court's calculation of damages but we did not decide whether the trial court applied the correct method of calculation.

■ Prior to enactment of the 1979 amendments to the DTPA, trebling of any actual damages was mandatory. *Woods v. Littleton*, 554 S.W.2d 662, 669 (Tex.1977). A seller could be held liable for treble damages even for innocent misrepresentations. We find that the legislature sought to mitigate the harsh effects of this rule without leaving consumers unprotected from deceptive practices. We further find that the legislature sought to achieve three things by amending section 17.50(b)(1): (1) to preserve mandatory treble damages for consumers with small claims causes of action; (2) to eliminate automatic treble damages against sellers who make innocent misrepresentations; and (3) to allow consumers to recover treble damages at the discretion of the trier of fact in cases of knowing violations of the DTPA. Debate on S.B. 357 on the Floor of the House, 66 Leg. (May 10 and 11, 1979) (on tape). The legislature implemented its goals by providing in the first two sentences of section 17.50(b)(1) for the mandatory trebling of that portion of actual damages that does not exceed $1000 in all DTPA cases. In the third sentence of section 17.50(b)(1), the legislature allowed the trier of fact to award in its discretion *"not more than three times the amount of actual damages in excess of $1000"* in cases in which the deceptive act or practice is found to have been committed knowingly. [Emphasis added.]

■ We find no legislative intent to provide for a quadrupling of damages in any case. Consistent with the legislative purpose, we hold that under section 17.50(b)(1), the maximum amount of damages recoverable in a suit in which actual damages resulting from a knowing violation of the DTPA exceed $1000 is three times the first $1000 of actual damages plus three times the actual damages in excess of $1000. That amount is equal to a trebling of actual damages.

■ In the present case, the Valencias should have recovered the following damages:

| | |
|---|---|
| (1) three times the first $1000 of actual damages | $ 3,000 |
| (2) not more than three times the amount of actual damages in excess of $1000 ($11,682 × 3) | $35,046 |

Accordingly, we modify the judgment of the court of appeals by reducing the total amount of damages awarded the Valencias to $38,046 as required by section 17.-50(b)(1).

■ The Valencias argue that disallowing a recovery of quadruple their actual damages less $1000 violates section 17.44

of the DTPA. We disagree. Section 17.44 calls for a liberal construction of the DTPA in furtherance of its purpose "to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection." The purpose of allowing multiple recoveries is twofold: to encourage consumers to initiate litigation and to deter sellers from violating the DTPA. *See Singleton v. Pennington,* 606 S.W.2d 682, 690 (Tex.1980). Our interpretation of section 17.50(b)(1) does not frustrate that purpose. Section 17.50(b)(1) as we have construed it to allow a maximum award of an amount equal to treble actual damages against knowing DTPA violators retains the incentive for consumers to go to court to pursue their claims. The provision so construed still serves to thwart the efforts of unscrupulous sellers who make knowing misrepresentations. Upon proof of a knowingly deceptive act, a consumer may obtain the same effective relief under the 1979 amendment to section 17.50(b)(1) as he could under the pre-1979 provision.

■ We next consider Jim Walter Homes's contention that there is no evidence to support the jury's finding that Jim Walter Homes "knowingly" violated the DTPA. Section 17.45(9) of the DTPA defines "knowingly" as "actual awareness of the falsity, deception, or unfairness of the act or practice giving rise to the consumer's claim ..., but actual awareness may be inferred where objective manifestations indicate that a person acted with actual awareness." Jim Walter Homes argues that the alleged misrepresentations were made to the Valencias at the time they entered the contract and that in order for Jim Walter Homes to have violated the DTPA "knowingly," the Valencias would have to show that Jim Walter Homes did not intend to build the house in compliance with the contract from the outset. This argument is without merit.

The act or practice giving rise to the Valencias' cause of action was not the mis-representations made to them at the time they entered into the contract; it was the act of building the house defectively after representing that the house would be built in a good and workmanlike manner. The jury was instructed in accordance with the definition contained in section 17.45(9). The record contains evidence from which the jury could have inferred that Jim Walter Homes knew that the house was defective at the time of construction. For example, two building inspectors testified that the piers supporting the house were improperly poured and that Jim Walter Homes attempted to cover up these defects with plaster. From this and other evidence in the record the jury could have inferred that Jim Walter Homes committed a knowing violation of the DTPA.

■ Finally, Jim Walter Homes argues that the Valencias should not recover under the DTPA because they failed to comply with the notice requirement of DTPA section 17.50A(a). That section requires the consumer to give written notice advising the person against whom the consumer seeks damages of the consumer's specific complaint and the amount of damages sought at least 30 days before filing suit. The purpose of the notice requirement is to discourage litigation and encourage settlements of consumer complaints. *North American Van Lines v. Bauerle,* 678 S.W.2d 229, 235 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.); *Barnard v. Mecom,* 650 S.W.2d 123, 127 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). The letter sent by the Valencias' attorney effectuated that purpose and complied with section 17.-50A(a).

We have fully considered all of Jim Walter Homes's remaining points and have determined these points to be without merit. We therefore modify the judgment of the court of appeals by reducing the amount of damages awarded to the Valencias to $38,-046 and we affirm the court of appeals' judgment as modified.