**CLISHAM MANAGEMENT, INC.**
**and Bristol Self Storage**

**v.**

**AMERICAN STEEL BUILDING**
**COMPANY, INC.**

**No. H–89–617 (AHN).**

United States District Court,
D. Conn.

April 28, 1992.

Thomas J. Rechen, Lawrence G. Rosenthal, James G. Green, Jr., Pepe & Hazard, Hartford, Conn., for plaintiffs.

Scott P. Moser, Day, Berry & Howard, Hartford, Conn., Special Masters.

Duncan R. MacKay, Craig A. Raabe, David J. Sheldon, Frank F. Coulum, Jr., Christopher Foster, Robinson & Cole, Hartford, Conn., A. Randall Friday, Crady, Jewett & McCulley, Houston, Tex. (pro hoc vice), Frederick U. Conard, Jr., Shipman & Goodwin, Hartford, Conn., for defendant.

## MEMORANDUM OF DECISION ON MOTION TO TRANSFER VENUE

NEVAS, District Judge.

This is a diversity action for breach of contract and violations of the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. §§ 42–110a *et seq.* ("CUTPA") and the Texas Deceptive Trade Practices Act, Tex.Bus. & Com.Code Ann. §§ 17.41 *et seq.* brought by Clisham Management, Inc. and Bristol Self Storage ("Clisham") against American Steel Building Company, Inc. ("American"). The action arises from a contract that was executed by the parties on March 23, 1985 in which American was to sell, design, and erect two, two-story, metal building frames. Clisham alleges that American breached the contract by providing substandard materials, defective installation, and shoddy workmanship. Clisham seeks money damages in excess of $295,000 for expenses incurred as a result of the breach.

On February 17, immediately prior to trial, the court held a hearing on a *sua sponte* motion to transfer venue to the Southern District of Texas, Houston Division. At the conclusion of the hearing, the court granted the motion to transfer, issued a short order disposing of the motion, and informed the parties that it would issue subsequently a memorandum setting forth the reasons for its decision. Accordingly, this memorandum articulates the basis for the court's decision to transfer venue in this matter.

### Background

#### A. Facts

The parties executed a contract on March 23, 1989 (the "Contract") for the purchase, erection, and installation of two, two story, metal building structures designed by the defendant.[1] (*See* Amend.Compl., Ex. A.) The buildings were to be used as a self storage facility encompassing about 55,000 square feet of space. The materials slated for use in the construction of the buildings were manufactured in Texas and shipped

by American to the construction site in Bristol, Connecticut. American also hired subcontractors responsible for the actual erection of the structures.

The erection of the structures, however, proceeded in a manner that deviated significantly from the expectations of Clisham. Specifically, Clisham alleges that American breached the Contract by: (1) supplying substandard materials, including poor quality, rusted steel components; (2) installing and designing defective concrete decks; and (3) providing shoddy workmanship in the installation and erection of the building structures. Clisham initiated this action to recover damages resulting from the alleged breach.

#### B. Procedural History

The procedural history of this lengthy and contentious litigation is far too cumbersome and extraneous to the issues currently before the court to require a detailed and comprehensive recitation. Certain aspects of this history, however, are helpful in understanding the procedural context in which the court takes the unusual step of transferring this case *sua sponte* to the Southern District of Texas.

##### 1. *American's Motion to Transfer Venue*

On December 4, 1989, American filed a motion to transfer venue to the Southern District of Texas, Houston Division. (*See* Filing No. 18, Def.'s Mot. Trans.) The basis for American's motion was a forum selection clause (the "FSC") in the Contract which stated "it is agreed that any litigation arising hereunder shall be had in the Courts of appropriate jurisdiction in Harris County, Texas." (Amend.Compl., Ex. A, at ¶ 17.) Clisham opposed the motion on the grounds that the financial and logistical inconvenience created by a transfer of venue at that stage of the litigation would effectively deprive the plaintiffs of their day in court.

---

1. There is some dispute as to when the parties first became acquainted. It is clear, however, that Clisham visited American's facilities in Houston, Texas in February of 1989. Subsequent to that visit the parties executed the contract that is the subject of this litigation.

In considering American's motion, the court, relying on *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), noted that district courts are to be accorded broad discretion in transferring the venue of a case pursuant to 28 U.S.C. § 1404(a) and that such discretion should be exercised "according to an 'individualized, case by case consideration of convenience and fairness'" even in cases, such as this one, where the motion to transfer was predicated on a forum selection clause. (*See* Filing No. 34, Ruling on Def's Mot. Trans., No. H–89–CV–00617 (AHN) (April 12, 1990) at 3–4 ("Transfer Ruling").) After weighing competing factors, particularly the increased logistical and financial burden on the ability of the parties to litigate this case in Texas, the court was persuaded that a transfer of venue contravened the interests of justice.[2] Accordingly, the court denied American's motion to transfer.

### 2. *The Choice of Law Issue*

With jury selection set for February 4, 1992, American filed a memorandum regarding choice of law issues on the afternoon of January 24, 1992. (*See* Filing No. 160, Def.'s Mem. Choice of Law.) Specifically, American objected to the fact that Clisham sought relief under both CUTPA and DTPA, two unfair trade practice statutes from Connecticut and Texas respectively. American argued that Clisham could not seek relief under two such statutes from competing jurisdictions for what was in essence one unfair trade practices claim. Rather, American contended that, since this case was to be tried in Connecticut, Connecticut law governed the unfair trade practices claim. American concluded,

therefore, that Clisham was precluded from bringing the DTPA claim in addition to the CUTPA claim.

On January 31, 1992, Clisham filed its memorandum in opposition. (*See* Filing No. 167, Pltf.'s Mem.Opp.Choice of Law.) Clisham contended that subtle differences between the CUTPA and DTPA causes of action along with a choice of law clause in the Contract ("CLC")[3] permitted the bringing of dual claims under both statutes. Specifically, Clisham argued that the CUTPA claim was, in essence, a tort claim and, thus, not in conflict with the CLC's mandate that Texas law governs all claims arising from the Contract. Clisham insisted, however, that the DTPA claim sounded in contract and, thus, could be maintained pursuant to the CLC's pronouncement that the laws of Texas, including DTPA, were applicable to all contract claims in this dispute. Clisham also argued that, should it prevail on both unfair trade practices claims, Clisham was entitled under Texas law to elect its remedy from either statute.

Recognizing that the disposition of the choice of law issues raised in these memoranda would have a profound impact on the admissibility of evidence, the charging of the jury, and ultimately the rights of the litigants, the court scheduled an expedited oral argument for the afternoon of February 4, 1992, immediately following jury selection. At oral argument, the court informed the parties, that in the interest of time, it would evaluate the choice of law arguments immediately and provide the parties with an expedited ruling from the bench on or before February 7, 1992.

On the morning of February 7, 1992, the court, after reviewing all memoranda, oral

---

**2.** Specifically, the court cited the following reasons for its denial of American's motion: (1) the disparity in size between the plaintiffs' and defendant's business entities; (2) the numerous witnesses required to accurately establish the alleged damages; (3) the large size of the allegedly defective building components; (4) the delay in litigation that would ensue from a transfer to the Southern District of Texas; (5) the fact that the FSC was " 'boiler plate' " language on a preprinted quote form; (6) the plaintiffs are residents of Connecticut and, thus, cannot be said to be forum shopping; (7) the majority

of the operative facts occurred in Connecticut; and (8) the financial burden of requiring the plaintiffs to litigate their claims in the distant forum of Houston, Texas could deprive the plaintiffs of their day in court. (Transfer Ruling at 6–7.)

**3.** The CLC states in relevant part: "[t]his contract shall be deemed to have been executed in the State of Texas, and the laws of the State shall be applicable thereto ..." (Amend. Compl., Ex. A, at ¶ 17)

argument, the authorities submitted by the parties, and its own research, issued its ruling from the bench that the DTPA claim was precluded under the applicable choice of law principles in this case. Specifically the court found: (1) the CLC's pronouncement that the laws of Texas governing disputes involving the Contract was limited in application to the breach of contract claim; (2) both the DTPA and CUTPA claims were rooted in tort rather than contract and, therefore, were outside the scope of the CLC, *see Portland Sav. & Loan Ass'n v. Bevill, Bresler & Schulman Gov't Sec., Inc.*, 619 S.W.2d 241 (Tex.Civ.App. 1981) (DTPA "has its roots in the tort of misrepresentation"); *Bailey Employment Sys., Inc. v. Hahn*, 655 F.2d 473, 475–476 (2d Cir.1981) (CUTPA lies in tort for choice of law analysis); (3) a direct conflict existed between the DTPA and CUTPA claims and a choice of law analysis was required to resolve that conflict; (4) relying on *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1940), the court applied Connecticut choice of law principles, the law of the forum state, to govern the resolution of the choice of law dispute; (5) under Connecticut law, *O'Connor v. O'Connor*, 201 Conn. 632, 637, 519 A.2d 13 (1986), the principle of *lex loci delicti* —the governing law is that of the place where the alleged tort occurs—applies to all choice of law disputes unless the application of that law produces an arbitrary and irrational result; and (6) the application of *O'Connor* to the facts in this case required that CUTPA, the governing Connecticut law for unfair trade practices, and not DTPA, governed any, and all, unfair trade practices claims in this case.

Immediately following the court's ruling, counsel for Clisham objected and moved the court for reconsideration. In addition to claiming that American had not given Clisham adequate time to respond to cases cited in American's reply memorandum on the choice of law issue filed with the court on the day of oral argument, Clisham reiterated that its DTPA claim was based on breaches of express and implied warranties and, thus, sounded in contract and not tort despite case law to the contrary. Clisham argued that because its DTPA claim lay in contract and not tort, the CLC's express selection of Texas law applied to all contract claims and, thus, DTPA not CUTPA governed this aspect of the case. In support of its contention, Clisham presented to the court, for the first time, *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617 (Tex. 1986). Clisham insisted that *Reed* was dispositive of its claim that DTPA actions for breach of warranty in building contract cases lay in contract not tort. Clisham concluded by informing the court that, not only was its ruling in error, but that the striking of the DTPA claim would prejudice its case severely.

Because the court had not been made aware of *Reed* prior to its choice of law ruling and because it was apparent from counsel's vigorous objection and motion for reconsideration that the choice of law issue would have an immense impact on the outcome of this litigation, the court granted Clisham's motion for *limited* reconsideration of the issue. Specifically, the court limited its reconsideration to two narrow issues: (1) the implications of *Reed* and its progeny on the resolution of the choice of law issue; and (2) the applicability of any case law involving conflicts of unfair trade practices statutes from different jurisdictions. The court, moreover, limited the parties to one five page memorandum each and requested copies of *all* Texas authorities cited in those submissions. The court informed the parties that it would rule, again from the bench, on its reconsideration of the issue on February 17, 1992 immediately prior to the commencement of trial.

A careful review of the parties' submissions revealed that the choice of law issues raised in this case were far more complex and tangled than the court initially anticipated. Indeed, following a lengthy and detailed inquiry, the court became convinced that the outcome of the choice of law dispute hinged on novel, first impression issues concerning the nature and scope of DTPA, an area of Texas law that is, at best, unsettled and evolving. Foremost among these issues was whether Clisham's

DTPA claim sounded in contract or tort. The court also became convinced that the impact of the "contort" issue, as well as other issues that underlay the choice of law dispute, was not simply limited to whether CUTPA and/or DTPA applied to the unfair trade practice claims, but implicated the common law breach of contract claim.

The court found that Clisham's argument on the contractual nature and scope of its DTPA claim had merit.[4] Of particular interest to the court was *Reed*, which clearly suggests that a breach of warranty claim under DTPA can be characterized as a contract claim. Although *Reed* ultimately prohibited the plaintiff from seeking exemplary or punitive damages in an action involving the breach of a construction contract, *Reed* nonetheless allowed the plaintiff to maintain a DTPA claim for breach of warranty despite its characterization of that claim as one in contract. *Reed* 711 S.W.2d at 618.

In the final analysis, however, *Reed* proved inconclusive on the viability of Clisham's DTPA claim in this case. Indeed, *Reed* raised more problems than it solved. For example, *Reed* was unclear on the issue of treble damages, an issue of paramount concern to the parties in this litigation since the crux of Clisham's DTPA claim is its attempt to invoke the statute's unique treble damages provision. *Reed* denies the plaintiff a right to seek "exemplary" or "punitive damages" precisely because the plaintiff's claim lies in contract. *Id.* at 618. A close reading of *Reed*, however, fails to clarify whether the plaintiff was still allowed to recover under DTPA's treble damages provision. Thus, Clisham's reliance on *Reed* begged the bottom line issue before the court: namely whether a DTPA claim based on a contract theory of breach of warranty triggers the treble

damages provision under that statute or whether treble damages are reserved for DTPA claims based solely on the tort of misrepresentation. *Cf. McClure v. Duggan*, 674 F.Supp. 211, 233 n. 3 (N.D.Tex. 1987) (noting that *Reed* merely stands for the view that under Texas law a breach of contract claim does not entitle the injured party to exemplary damages).

Other Texas cases, while not dispositive of the damages issue, suggest that, while a DTPA breach of warranty claim may initially lie in contract, an attempt to recover treble damages on that claim for actual damages in excess $1000 under DTPA, takes that claim out of the law of contract and places it in the tort of misrepresentation. In *Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239 (Tex.1985), the Texas Supreme Court held DTPA's treble damages provision, Subsection 17.50(b)(1) as discretionary rather than mandatory for portions of actual damages that exceed $1000. *Id.* at 241. Indeed, *Valencia* predicates a recovery under the statute's treble damages provision upon a showing of a level of scienter suggestive of a tort based cause of action. *Valencia* held that treble damages sought on claims in excess of $1000 in actual damages are awarded at the discretion of the trier of fact only "in cases in which the deceptive trade practice is *found to have been committed knowingly.*" *Id.* (emphasis added). Whereas mere breach of warranty is sufficient to trigger liability under the statute, *Valencia* suggests that treble damages should only be awarded under DTPA after a finding that a defendant's deceptive trade practice reached a level of culpability sufficient to trigger punitive measures in addition to basic DTPA liability and, then, only at the discretion of the trier of fact. This scienter requirement of DTPA claims for treble

---

4. In contending that its DTPA claim was rooted in contract not tort, Clisham asked the court to focus not on CLC language restricting the application of Texas law to the contract *per se* but on the words that the *"laws"* (plural) shall be *"applicable"* to the contract. (Filing No. 178 Pltf.'s Mem.Supp.Mot. Reconsideration at 1 (emphasis original).) Clisham reasons that DTPA is applicable as a law of Texas to any contract claim by virtue of the choice of law provision. To the

extent that Clisham's DTPA claim is a breach of warranty claim pursuant to Subsection 17.-50(a)(2) of DTPA ("a consumer may maintain an action where any of the following constitute a producing cause of actual damages: ... (2) breach of implied or express warranty"), Clisham insists such a claim lies in contract and not tort and, thus, the laws of Texas, including DTPA, apply.

damages, therefore, is an important indication that such claims are based on a tort theory of misrepresentation rather than a contract theory of a simple breach of warranty.

Additional Texas case law submitted by Clisham in support of its position, moreover, "unnecessarily [added] more confusion than clarity" to the court's understanding of the scope and nature of DTPA.[5] *Southwestern Bell Tel. Co. v. De-Lanney,* 809 S.W.2d 493, 499 (Tex.1991) (Doggett, J., concurring); *see also Weitzel v. Barnes,* 691 S.W.2d 598, 601–603 (Tex.1985) (Gonzalez & McGee, JJ., dissenting); *Smith v. Baldwin,* 611 S.W.2d 611, 618–620 (Tex.1981) (Greenhill, C.J., Pope & McGee, JJ., dissenting). By their own admission, the Texas courts have "muddled the law of 'contorts' and an all encompassing bright line demarcation of what constitutes a tort distinct from breach of contract has proven elusive" in the context of a DTPA claim. *DeLanney,* 809 S.W.2d at 495 (Tex.1991) (Gonzalez, J., concurring).

Similarly, American's reply raised additional concerns for the court. First, the court shared American's basic concern that *Reed* is a case that sought to shrink, not expand, the exemplary damage liability of a defendant in a breach of contract action. Thus, the court found very problematic the fact that Clisham was using *Reed* to expand rather than shrink American's liability under DTPA and sought to do so in a manner that created additional liability for American under CUTPA.

Second, American raised the problematic but important issue of linkage between the DTPA claim and the common law breach of contract claim. Specifically, if the court were to allow Clisham to proceed on its DTPA claim on the theory that such a claim flowed from the Contract, it followed that Clisham could not prevail on the DTPA claim unless it prevailed on its common law contract claim. The linkage issue, moreover, raised the possibility that Clisham might try to introduce evidence of misrepresentation to establish treble damages liability under DTPA, evidence that otherwise would be barred under the parole evidence rule were it introduced only to support a common law breach of contract claim.

Third, American's submissions raised, albeit indirectly, the possibility that allowing Clisham to proceed on its DTPA claim could produce conflicts with other aspects of Texas law. Specifically, the case law suggests that DTPA claims are not governed by the elements of a common law contract claim under Texas law. Texas law is unclear as to whether the privity and statute of frauds requirements of a contract claim apply in a DTPA action predicated on breach of warranty. *See e.g. Basin Operating Co. Ltd. v. Valley Steel Prod. Co.,* 620 S.W.2d 773, 777 (Tex.Civ.App.1981) (privity of contract not required to invoke the penalties of DTPA for breach of warranty); *but cf. McClure v. Duggan,* 674 F.Supp. 211, 224 (N.D.Tex.1987) (statute of frauds will not insulate the defendant from liability under DTPA for fraudulent misrepresentation where the alleged fraudulent acts were independent of any underlying oral agreement); *Keriotis v. Lombardo Rental Trust,* 607 S.W.2d 44 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.) (same).

---

**5.** Similarly, Clisham's reliance on cases involving conflicts of law between different jurisdictions' unfair trade practices statutes are inconclusive when applied to this case. *See e.g., Brock v. Entre Computer Ctr., Inc.,* 933 F.2d 1253 (4th Cir.1991) (inapposite because it reviews conflict of laws ruling by district court under an abuse of discretion standard in the context of a motion to transfer venue rather than, as here, in the context of two competing causes of action); *Moses v. Business Card Exp., Inc.,* 929 F.2d 1131 (6th Cir.1991) (inapposite because it involved the application of a CFC to a dispute involving the validity of the contract itself which was allegedly procured as the result of fraud and review of lower court ruling limited to abuse of discretion standard in the context of a motion to transfer venue); *Orthopedic & Sports Injury Clinic v. Wang Lab, Inc.,* 922 F.2d 220 (5th Cir.1991) (Louisiana Unfair Trade Practices Act (LUTPA) held inapplicable not because of conflicting unfair trade practices statutes but because plaintiff did not fall within the definition of the statute and although tort claims may be governed by a contracts CFC, that part of ruling dealt only with applicable standard of negligence to be applied to a common law tort claim).

Here, the absence of Texas case law on the issue of whether the requirements and elements of Texas contract law apply to a DTPA claim predicated on a contract theory created particular problems. By allowing Clisham to bring its DTPA claim for breach of warranty on the grounds that such a claim flows from the contract rather than the tort of misrepresentation, the court would be allowing Clisham to plead, in effect, a contract claim under DTPA without subjecting that claim to the requirements of Texas contract law.[6] Thus, Clisham could fail to satisfy the elements of a valid contract claim under Texas law and still prevail on a separate breach of warranty claim under DTPA. Pushed to its logical extreme, moreover, Clisham's theory of recovery under DTPA would allow a plaintiff who could not satisfy the basic elements of a contract claim to skirt the privity or statute of frauds requirements by simply recasting the contract claim as a DTPA claim for breach of warranty.

Despite the persuasive logic of its position, American, like Clisham, failed to provide the court with any dispositive authority. Indeed, case law cited by American is, at least implicitly, in accord with Clisham's contention that certain DTPA claims are rooted in contract not tort. *See e.g. McClure*, 674 F.Supp. at 223 n. 3. Although *Reed* and *McClure* do not address the applicability of the treble damages remedy to a DTPA claim rooted in contract, the case law does not, therefore, directly contravene Clisham's contention that its DTPA claim lies in contract.

What was clear from both parties' submissions was the novel and complex nature of this choice of law dispute. The choice of law question in this case turned on first

impression issues of Texas law regarding the scope and nature of DTPA, the resolution of which would have significant ramifications well beyond this case. The court became concerned that not only would it have to confront a slew of first impression issues concerning the unsettled law of a foreign jurisdiction, issues that would significantly impact on the law in that jurisdiction, but that courts more familiar with the law of that jurisdiction would be precluded from reviewing those issues on appeal.

After evaluating the complex and novel nature of the issues raised, the impact of those issues on the substantive rights of the litigants in this case, and the impact of its ruling on jurisdictions that routinely apply Texas law, the court became concerned that this case belonged in a district court in Texas not Connecticut. At the very least, the court deemed it in the interest of justice and fairness to *consider* a transfer of venue to the Southern District of Texas. In considering this unusual step, the court hoped that a transfer of venue might allow the litigants an opportunity to raise these novel and complex issues in a forum with both a greater stake in and familiarity with the scope and nature of DTPA.

Accordingly, on February 17, 1992, immediately prior to the start of trial, the court notified the parties on the record that it was formally considering, *sua sponte*, a transfer of venue to the Southern District of Texas, Houston Division pursuant to 28 U.S.C. 1404(a). In compliance with the requirement that parties be given prior notice of and an opportunity to be heard on a *sua sponte* motion to transfer venue, the court, after notifying the parties of its intentions, granted counsel for Clisham and American

6. The privity requirement was of particular concern to the court in this case. American stated on the record during the hearing on the *sua sponte* motion to transfer that it planned to raise the privity issue as a defense to the breach of contract claim. Specifically, American denies in its answer that the contract between Clisham Management and itself is a third party beneficiary contract for the benefit of Bristol Self Storage. Rather, American contends that Bristol Self Storage contracted directly with Clisham for the construction of the storage facil-

ity and that Clisham, in turn, contracted directly with American for the design, materials, and erection. American argues that this type of contractual relationship relegates American to the status of a subcontractor whose only obligation was to Clisham. American concludes that there is no privity, as required by Texas law, between Bristol Self Storage and itself, and thus, only Clisham, whose damages are nominal in this case, and not Bristol Self Storage, can prevail on the breach of contract claim under Texas law.

an opportunity to argue on behalf of their respective clients the merits of such a transfer.[7]

### Discussion

 A transfer of venue for the convenience of the parties and in the interest of justice may be made upon motion by either of the parties *or* by the court *sua sponte. Mobil Corp. v. S.E.C.*, 550 F.Supp. 67, 69 (S.D.N.Y.1982); *see also I–T–E Circuit Breaker Co. v. Becker*, 343 F.2d 361, 363 (8th Cir.1965); *Coleman v. Chen*, 712 F.Supp. 117, 123 (S.D.Oh.1988); *Pijanowski v. Cleveland Clinic Foundation*, 635 F.Supp. 1435, 1436 (E.D.Mich.1986); *Riordan v. W.J. Bremer, Inc.*, 466 F.Supp. 411, 417 (S.D.Ga.1979); *Watwood v. Barber*, 70 F.R.D. 1, 9 (N.D.Ga.1976); *Monsanto Co. v. United Gas Pipe Line Co.*, 360 F.Supp. 1054 (D.D.C.1973); 15 Wright & Miller, & Cooper *Federal Practice and Procedure,* § 3844, pp. 208–209 (1976). In general, a transfer of venue is made pursuant to 28 U.S.C. 1404(a) which provides "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." District courts are accorded broad discretion in a decision to transfer venue and such a decision will not be overturned except on a very strong showing that the court abused its discretion. *Codex Corp. v. Milgo Elect. Corp.*, 553 F.2d 735, 737 (1st Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977); *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3rd Cir.1973). *Berg v. First American Bankshares, Inc.*, 576 F.Supp. 1239, 1241 (S.D.N.Y.1983), *transferred to* 599 F.Supp. 500, *aff'd,* 796 F.2d 489 (D.C.Cir.1986). In considering a transfer of venue pursuant to 28 U.S.C. § 1404(a), however, a plaintiff's choice of forum is entitled to considerable weight. *Berg,* 576 F.Supp. at 1241; *Abramson v. INA Capital Management Corp.*, 459 F.Supp. 917, 921 (E.D.N.Y.1978); *but cf. Kachal, Inc. v. Menzie*, 738 F.Supp. 371 (D.Nev.1990). Applying these rules,

the court finds that a transfer of venue to the Southern District of Texas is appropriate in this instance.

 As a preliminary matter, a court should give the parties an opportunity to be heard on a motion to transfer *sua sponte. Mobil Corp.*, 550 F.Supp. at 69; *Riordan,* 466 F.Supp. at 419; *see also Starnes v. McGuire*, 512 F.2d 918 (D.C.Cir.1974). Here, the parties were notified and given a recess to research the issues implicated by a transfer of venue to Texas. Following the recess, the court conducted a one-hour hearing on the matter. Accordingly, the court is satisfied that it has complied with the notice and hearing requirements for considering a *sua sponte* motion to transfer venue.

Clisham contends that nothing has changed since the court last considered the transfer issue. Clisham asserts that the only factor that weighs in favor of transfer is the "boiler-plate" FSC which it contends should be given minimal consideration. Clisham insists that to transfer this case to Texas on the eve of trial would produce an even greater hardship on and inconvenience for the plaintiffs than that found by the court in its Transfer Ruling of April, 1990. Clisham concludes, therefore, that a transfer at this stage of the proceedings inconveniences the parties and witnesses and contravenes the interest of justice. The court disagrees.

There are a number of factors that weigh heavily in favor of a transfer of venue to the Southern District of Texas. First, it is well settled that where complex or novel issues of foreign law are involved, the appropriateness of "having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself" is given significant consideration in a decision to transfer venue. *Van Dusen v. Barrack,* 376 U.S. 612, 645, 84 S.Ct. 805, 824, 11

---

**7.** The court, after notifying the parties of its intention, took a 30 minute recess to allow counsel to research the transfer issue and for-

mulate their positions for oral argument. To facilitate the research, the court granted counsel the opportunity to use the district court library.

L.Ed.2d 945 (1964); *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947); *see also Vaughn v. American Basketball Ass'n*, 419 F.Supp. 1274, 1278 (S.D.N.Y.1976).

Here, the complexity and novel nature of Texas law in this dispute is particularly significant. As discussed earlier, the court cannot possibly resolve this conflict of laws dispute without first deciding a number of first impression issues concerning the scope and nature of DTPA, an area of Texas law that has been persistently problematic for Texas courts. Indeed, deciding whether Clisham's breach of warranty claim sounds in contract or tort is only the tip of the iceberg. Were the court to follow the Texas Supreme Court's ruling in *Reed* and find that the breach of warranty DTPA claims sound in contract, the court would then be forced to resolve a host of other unsettled issues such as: (1) whether Clisham can make out a treble damages claim under DTPA without transforming that claim from contract to tort; (2) whether Clisham is required to prove its contract based DTPA claim under the traditional requirements of Texas contract law or whether it can avoid those requirements by taking advantage of DTPA's more lax approach to privity and the statute of frauds; and (3) whether the court must link the viability of the DTPA claim to the success of the common law contract claim in its jury instructions.

The resolution of these issues by a district court in Connecticut is particularly unfair and inappropriate in this instance. It is unfair to both parties, whose fierce and relentless litigation of these issues suggest that the outcome of the choice of law dispute will have immense repercussions on their substantive rights in this case. It is unfair, moreover, to the state and federal courts of Texas which would have to contend with what could be a significant disruption of the precedential status quo of DTPA's already unstable case law. As noted earlier, the court is particularly concerned that should one of the parties appeal this court's resolution of the choice of law issue it would be the Second Circuit and not the Fifth Circuit which would have the final word in this matter.

If the court were convinced that its initial ruling on the choice of law issue was supportable under the applicable law, it would not hesitate to affirm that ruling and proceed to trial without the DTPA claim. Because the court believes that Clisham's position is not without some support and because the parties insist that they will suffer severe prejudice should the court rule against them on the DTPA claim, the court believes that the right of the parties to have their day in court before a forum with a greater familiarity with and stake in these novel issues of Texas law is of paramount concern in the court's consideration of this transfer of venue.[8] *See*

---

**8.** The court takes issue with Clisham's contention that the choice of law issue is not new to this case and was in fact before this court during its initial consideration of the transfer issue when it denied American's motion in April of 1990. A careful review of the memoranda submitted by the parties on that motion reveals that nothing could be farther from the truth. (*See generally*, Filing No. 19a, Def.'s Mem.Supp.Mot.Transfer; Filing No. 21a, Pltf.'s Mem.Opp.Mot.Transfer; Filing No. 25, Def.'s Rep.Mem.Supp.Mot.Transfer.) While the issue of Texas law was raised in those submissions as evidence of the parties intent on venue, Texas law was never raised in the context of a conflicts of law dispute and was never discussed in terms of the unique theory of Clisham's dual claims under DTPA and CUTPA. Indeed, the immediacy of the choice of law dispute is evidenced by the parties last minute submissions of relevant case law and Clisham's own complaint that American intentionally hid this issue

from it and the court until the eve of trial in an attempt to "sand bag" its case. In light of these claims and in light of the fact that the court has spent a disproportionate amount of time in trying to resolve this and a host of other contentious disputes that have plagued this litigation since its inception, the court is mystified by Clisham's assertion. (*See* Exhibit A, Docket Sheet for Civ. No. H–89–617 AHN) (documenting 183 filings in this case during its pendency before this court) (attached).)

The court, moreover, is disturbed by the implication of Clisham's assertion that the court's interjection of the transfer issue at this stage of the process is simply a means for ridding itself of this matter in an expedient effort to lighten its docket. If the court were interested in ridding itself of this case out of a mere desire to lighten its docket, the court would have granted American's motion to transfer back in April of 1990 and not bothered to expend the effort since

*Lozano v. Civiletti*, 89 F.R.D. 475, 480 (D.D.C.1980) (experience and training in Texas law make district court in Texas a more appropriate forum for decision concerning state law issues).

Second, the FSC's express intention that all disputes arising from the agreement be litigated in the courts of Harris County, Texas is to be accorded due weight. Admittedly, § 1404(a) places broad discretion in a district court to adjudicate motions to transfer regardless of the presence of a valid forum selection clause. *Stewart*, 487 U.S. at 29, 108 S.Ct. at 2244. In adjudicating such a motion, however, "[t]he presence of a forum selection clause ... will be a significant factor that figures centrally in the district court's calculus." *Id.* Thus, while not controlling in this case, the FSC is another significant factor that weighs in favor of a transfer of venue.[9]

then in steering this case to trial through the tedious, contentious, and expensive pretrial litigation battles waged by counsel for both parties. (*Id.*)

Finally, the court notes for the record that its decision to consider, *sua sponte*, a transfer of venue at this stage of the litigation is simply one more attempt by the court to accommodate the parties and insure that they receive the fairest and most efficient resolution of this litigation, a task that was often needlessly complicated throughout by what appeared to the court to be ongoing legal posturing caused by the inability of counsel for both parties to get along.

9. At the hearing on the *sua sponte* motion to transfer, American argued that a transfer of venue at this stage of the litigation was not only warranted in this case but, was in fact, mandated by *Jones v. Weibrecht*, 901 F.2d 17 (2d Cir. 1990). Specifically, American contended that *Jones*, which was decided April 11, 1990, one day before this court issued its ruling denying American's motion to transfer venue, mandates that a forum selection clause be given full force in determining the proper venue of a diversity case unless the opposing party can demonstrate that the enforcement of that clause would be unreasonable and unjust or that the clause was obtained through fraud or overreaching. *See Id.* at 18, 19, citing *M/S BREMEN v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *Seward v. Devine*, 888 F.2d 957, 962 (2d Cir.1989) (applying *Bremen* without reference to *Stewart*); *Manetti–Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509, 513 (9th Cir.1988). American asserted that *Jones* held that the usual, broad based, discretionary balancing normally performed when determining a transfer of venue did not apply to a case, such as this one, where a valid forum selection clause specified the appropriate venue. Thus, American concluded that the court committed reversible error when, relying on the Supreme Court's ruling in *Stewart*, the court refused to enforce *per se* the contract's specification of venue in Harris County, Texas set forth in the FSC and, instead, balancing various factors, exercised its discretion pursuant to § 1404(a) not to grant American's motion to transfer. The court disagrees.

Despite the initial appearance of plausibility, American's reading of *Jones* is in error. *Jones* involved alternative motions to dismiss and/or remand to state court predicated on a forum selection clause that precluded "litigation from a venue other than a specific state court." *Jones*, 901 F.2d at 19. *Jones* held only that § 1404(a)'s "broad based balancing is not appropriate where, as here, a party seeks to have an action *dismissed or remanded to state court, rather than transferred*, on the basis of a forum selection clause ..." *Id.* (emphasis added). Indeed, *Jones* is completely in accord with the court's earlier reliance on *Stewart* and its subsequent refusal to enforce the FSC. *Jones* directly quotes *Stewart* for the proposition that "[a] motion to transfer an action to another federal district pursuant to section 1404(a) calls for an 'individualized, case by case consideration of convenience and fairness.'" *Id. Jones*, however, is quick to distinguish itself from *Stewart* noting that *Stewart* involved a motion to transfer under § 1404(a), whereas its consideration of a forum selection clause was pursuant to a motion to dismiss and/or remand. *Id.*

The cases cited by *Jones*, moreover, including *Bremen*, are inapposite to the situation here. Those cases held only that a forum selection clause should be enforced unless shown to be unreasonable in evaluating motions to dismiss or remand. *See e.g., Bremen*, 407 U.S. at 7, 20, 92 S.Ct. at 1912, 1918 (remanding case for failure by lower courts to give forum selection clause due weight in considering a motion to dismiss for *forum non conveniens*); *Seward*, 888 F.2d at 961 (affirming district court's dismissal of contract claims pursuant to a forum selection clause); *Manetti–Farrow*, 858 F.2d at 510 (affirming dismissal of action pursuant to a forum selection clause requiring the case to be litigated in Florence, Italy.) In contrast, this case involves a motion to transfer venue to another district court *not* a motion to dismiss for *forum non conveniens* or a motion to remand.

In considering a motion to transfer venue to another district court pursuant to § 1404(a), therefore, there is nothing in *Jones, Bremen*, or the cases cited therein to suggest that the balancing approach set forth in *Stewart* and applied by this court in its earlier ruling is bad law. *See Stewart*, 487 U.S. at 28–29, 108 S.Ct. at 2244. To the contrary, to predicate a transfer of venue to another district court solely upon *Jones* would, in this court's view, constitute error.

Third, several of the court's previous concerns over the inconvenience posed by a transfer of venue to Texas in this case no longer carry the weight they did in April of 1990. The court notes that all pending pretrial matters have been resolved, with the lone exception of the choice of law issue, discovery is complete, and the case is ready for trial.[10] Thus, transfer of this case to a district court in Texas at this juncture will not require the type of expensive, shuttle litigation that would have been required during the lengthy and contentious pretrial phase of this case. Similarly, the court, after viewing a number of the exhibits prepared for trial, including the steel building panels which are the subject of much of this dispute, is no longer concerned that the size of the allegedly defective building parts make a change of venue overly burdensome on the ability of the parties to move their exhibits to Texas.

Finally, Clisham's argument on the choice of law issue appears to mitigate against the court's initial finding in its Transfer Ruling that the lion's share of the operative facts from which this controversy arises occurred in Connecticut. (*See* Transfer Ruling at 6–7.) Specifically, Clisham contends that "[t]he conduct causing the injury occurred mostly *in the state of Texas* wherein the defendants misrepresented the basis of the bargain ..." (Filing No. 167, Def.'s Mem. Opp. Choice of Law, at 15 (emphasis added).) Clisham, moreover, argues that the defendant improperly manufactured the steel components, improperly designed part of the structure, failed to properly instruct the common carriers on the shipping of goods to Connecticut, and failed to properly train and instruct the erectors all "while *in the state of Texas.*" (*Id.*) In short, while there will be some additional costs to the parties associated with trying this case in Texas, the degree of inconvenience for the parties in putting on their cases in Houston is significantly less than what the court initially contemplated when it denied American's motion to transfer in April, 1990.

In sharp contrast to the court's concerns expressed in its Transfer Ruling of April 12, 1990, a transfer at this stage of the litigation serves to accommodate, rather than inconvenience, the parties. American requested a transfer of venue predicated on the FSC several years ago. American will now have its wish. Clisham rests a significant part of its case against American upon a novel theory of DTPA liability to the exclusion of Connecticut choice of law principles and CUTPA. Clisham will now be able to argue its theory in a court more familiar with the applicable law. In light of the novel issues of Texas law, the substantive rights of the parties that turn on those issues, and the original intent of the parties to litigate this case in a Texas court pursuant to the FSC, the court believes that a transfer of venue to the Southern District of Texas, Houston Division, serves the goals of comity, party convenience, and fairness.

### Conclusion

For the reasons stated above, the court transferred the venue of this case to the Southern District of Texas, Houston Division on February 17, 1992.

---

10. In an effort to expedite trial and avoid further delay, the court, aware of the potential delay in obtaining a civil trial date in the Southern District of Texas, contacted the Honorable James DeAnda, Chief Judge, Southern District of Texas, to inquire about the possibility of an expedited trial date in this matter. After discussing the matter with Chief Judge DeAnda, the court was satisfied that a trial date could be procured without the type of delay that might prejudice the parties in any significant manner.